[No. 53858-6-I. Division One. September 19, 2005.]

*In the Matter of the Detention of* ARTHUR SMITH, JR.

THE STATE OF WASHINGTON, *Respondent*, v. ARTHUR SMITH, JR., *Appellant*.

*Dana M. Lind* (of *Nielsen, Broman & Koch, P.L.L.C.*), for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Brooke E. Burbank, Deputy*, for respondent.

¶1 COLEMAN, J. — Arthur Smith, Jr., was convicted in Washington of rape and sentenced to imprisonment. During his sentence, the state of Alaska filed a detainer and parole warrant for his failure to report during parole. Shortly before the end of his Washington sentence of confinement, the State filed a sexually violent predator petition under chapter 71.09 RCW.

¶2 During a jury trial on the petition, the prosecutor was briefly overcome with emotion while describing Smith's

criminal history in opening statements. The trial court granted her request for a break in the proceedings.

¶3 The jury found that Smith was a sexually violent predator (SVP). He appeals. He argues that because the state of Alaska had filed a detainer and parole warrant, he was not "about to be released from total confinement" in the context of RCW 71.09.030 and that the State therefore lacked a statutory basis for filing an SVP petition. He also argues that the incident during opening statements amounted to prosecutorial misconduct requiring a mistrial. We affirm. "Total confinement" in RCW 71.09.030 means confinement in Washington state institutions. Smith was therefore "about to be released from total confinement." The incident during opening statements did not constitute prosecutorial misconduct, as the prosecutor acted quickly to hide her emotions and the incident likely did not have a significant effect on the jury.

## FACTS

¶4 Arthur Smith, Jr., was convicted in Alaska of two counts of rape and one count of escape in the second degree. He was released on discretionary parole in 1991. He reported as directed for five months but failed to return after an unauthorized absence. Alaskan authorities had no idea of his whereabouts until he was arrested in Washington in 1992 for rape.

¶5 In 1993, Smith was convicted in a King County court of rape in the second degree. He was given an exceptional sentence of 144 months. The state of Alaska filed a detainer and parole warrant in 2002 with the Washington Department of Corrections. Shortly before the end of his sentence of confinement, the State petitioned to commit Smith as a sexually violent predator. Smith moved to dismiss the petition, but the motion was denied.

¶6 A jury trial took place in January 2004 to determine whether Smith was a sexually violent predator. Smith moved a second time to dismiss, and again the motion was

denied. During opening statements, the deputy prosecutor was describing Smith's criminal history when she asked for "a moment." The transcript reads as follows:

[MS. MURRAY:] His next rape occurred on April 19, 1992. Less than a year after he absconded. This was the rape of Mary Brown. It was an Easter Sunday, April 19th that year. Mary Brown had taken a walk that day.

May I have a moment, your honor?

THE COURT: I beg your pardon?

MS. MURRAY: May I have a moment?

THE COURT: You want a break?

MS. MURRAY: Just a second.

THE COURT: I'm going to excuse the jury for a minute. Please, go back to the jury room. (The jury leaves the courtroom).

MS. MURRAY: I'm okay, your honor.

Reporter's Partial Transcript of Proceedings (RPTP) (Jan. 16, 2004) at 8-9. Smith's attorney moved for a mistrial. The court stated that it was "not prepared to grant a mistrial at this point." RPTP (Jan. 16, 2004) at 10. When the jury was called back, the judge told the prosecutor, "Ms. Murray, you may continue." RPTP (Jan. 16, 2004) at 13. The prosecutor said, "I apologize," and continued her description of Smith's criminal history. RPTP (Jan. 16, 2004) at 13.

¶7 After closing statements, the court additionally remarked that Smith's criminal history was not being tried and that any emotional display during the discussion of the rapes committed by Smith "doesn't go to the impartiality of this jury." Reporter's Transcript of Proceeding (RTP) (Jan. 29, 2004) at 1045.

MS. MURRAY: Your honor, at some point in time—and I know that the court regarding my opening statement was going to make additional findings on the record. When should we do that?

THE COURT: It was more of an observation that the issue of the rapes themselves is not being tried to this jury. And so any emotional response to the rapes themselves, in my opinion,

doesn't go to the impartiality of this jury. If the issue of the rapes had been in question, whether they occurred or not, I think there might be a different answer.

MS. MURRAY: Okay.

THE COURT: But because the issue is not that, the issue is whether Mr. Smith is a sexually violent predator, while it's an unfortunate incident, it's certainty [sic] not one, in my view, that rises to the level of requiring a mistrial. So. . . .

MS. MURRAY: And just for the record, it wasn't—for the record, it wasn't like I was bent over crying, in tears or anything like that. My eyes welled up, and I tried my hardest not to look at the jury and turn away.

And I think the court had probably the best opportunity to look, see my reaction when I looked at your honor as well.

THE COURT: Yeah. I have no idea what the jury saw or perceived.

MS. BURBANK [sic]: I really tried hard not to put my head down. So just for the record, I wasn't bent over crying, sobbing.

MR. CARNEY: While that is true, the respondent's position is it was quite clear that Ms. Murray was overcome with emotion.

THE COURT: I think there was—it was obvious to me, looking from this perspective, that there was an emotional response. And what the jurors saw or perceived is certainly not known to me. I don't think, under these facts, it rises to the level of a mistrial. So. . . .

MS. MURRAY: Thank you, your honor.

RTP (Jan. 29, 2004) at 1044-45.

## *ANALYSIS*

 ¶8 We begin by analyzing Smith's claim that a person is not "about to be released from total confinement" in the context of RCW 71.09.030(1)[1] when his sentence of confinement in a Washington state institution is about to

---

[1] When a person convicted of a sexually violent offense "is about to be released from total confinement," the appropriate prosecuting attorney may file a petition "alleging that the person is a 'sexually violent predator' and stating sufficient facts to support such allegation." RCW 71.09.030(1), (5). "The construction of a statute

end but another state has filed a detainer and parole warrant. Smith argues that the legislature intended "about to be released from total confinement" to mean that an offender is about to be released from confinement into society. The State argues that Smith's interpretation of RCW 71.09.030 would create a conflict with RCW 71-.09.025(1)(a) and that Smith misreads the statute's legislative history. We agree with the State. RCW 71-.09.025(1)(a) provides that when a person convicted of a sexually violent crime may meet the criteria of a sexually violent predator, the "agency with jurisdiction" must refer the person to the appropriate prosecuting attorney "three months prior to [t]he anticipated release from total confinement" of the person. RCW 71.09.025(1)(a)(i). The "agency with jurisdiction" is "the agency with the authority to direct the release of a person serving a sentence or term of confinement and includes the department of corrections, the indeterminate sentence review board, and the department of social and health services." RCW 71.09.025(4). But under Smith's argument that "total confinement" includes subsequent confinement in another state, no Washington agency would have the authority to direct the release of a person. Under these circumstances, there would be no agency with jurisdiction to refer an offender under RCW 71-.09.025(1)(a)(i) for SVP proceedings. This would undermine the operation of RCW 71.09.025(1)(a)(i) and frustrate the commitment process envisioned by RCW 71.09.030(1).

¶9 We also note that the Washington Supreme Court incorporated the definition of "total confinement" in former RCW 9.94A.030(35) (1996) into chapter 71.09 RCW in *In re Det. of Albrecht*, 147 Wn.2d 1, 9-10, 51 P.3d 73 (2002). This former statute defines "total confinement" as "confinement inside the physical boundaries of a facility or institution operated or utilized under contract by the state or any other unit of government for twenty-four hours a day, or pursuant to RCW 72.64.050 and 72.64.060." Former RCW 9.94A-

---

is a question of law which is reviewed de novo." *State v. Ammons*, 136 Wn.2d 453, 456, 963 P.2d 812 (1998).

.030(35). This definition supports the State's argument that a person is "about to be released from total confinement" when the person is about to finish a sentence of confinement in Washington institutions, regardless of another state's detainer.

¶10 Smith argues that the legislature intended "about to be released from total confinement" to mean that the offender was about to reenter the community and that amendments to the statute reflect this intent. As originally enacted, RCW 71.09.030(1) provided in part: "When it appears that: (1) *The sentence* of a person who has been convicted of a sexually violent offense *is about to expire*, or has expired on, before, or after July 1, 1990; . . . ." LAWS OF 1990, 1st Ex. Sess., ch. 12, § 3; LAWS OF 1990, ch. 3, § 1003 (emphasis added). In 1992, the legislature changed the statute to read: "When it appears that: (1) *The term of total confinement* of a person who has been convicted of a sexually violent offense *is about to expire*, or has expired on, before, or after July 1, 1990; . . . ." LAWS OF 1992, ch. 45, § 4 (emphasis added). The legislature amended the statute in 1995 to its present version: "When it appears that (1) A person . . . *is about to be released from total confinement.* . . . " LAWS OF 1995, ch. 216, § 3. The 1995 Final Legislative Report notes that under the 1995 session law, "the operation of the statute is clarified." 1995 FINAL LEGISLATIVE REPORT, 54th Wash. Leg., Reg. Sess., at 176.[2]

¶11 Smith argues that the change in language from "the sentence" to "total confinement" indicates the legislature's intent that the statute apply only when an offender was about to leave confinement and enter the community, not merely when an offender was about to complete a sentence of confinement in Washington state institutions. We disagree.

¶12 The 1995 Final Legislative Report indicates that the legislature clarified aspects of the Community Protection

[2] The Senate Bill Report, in a summary of a House amendment to the bill, states that "[c]larification is added concerning the court's jurisdiction over a sexually violent predator." S. B. REP. on Second Substitute S. B. 5088, 54th Leg., Reg. Sess. (Wash. 1995).

Act of 1990 in response to the Washington Supreme Court's decision in *In re Pers. Restaint of Young*, 122 Wn.2d 1, 857 P.2d 989 (1993), superseded by statute as stated in *In re Detention of Thorell*, 149 Wn.2d 724, 746, 72 P.3d 708 (2003). In *Young*, the court held that due process required evidence of a recent overt act for the SVP commitment of a person not currently incarcerated. *Young*, 122 Wn.2d at 39-42. The Report provides that the legislature amended the Community Protection Act so that "[i]f the person *is not totally confined* at the time the petition is filed, the state must show a recent overt act." 1995 FINAL LEGISLATIVE REPORT, 54th Wash. Leg., Reg. Sess., at 176 (emphasis added).

¶13 The legislature clearly intended to make the date of a person's release the focus of the statute. The legislation as a whole makes clear that the legislative focus is the release of a person from a Washington state institution. We do not find persuasive Smith's argument that the legislature changed the language of RCW 71.09.030(1) with the intent ascribed to it by Smith.

¶14 Smith also contends that the Task Force on Community Protection, the entity that drafted the legislation that was enacted as the Community Protection Act of 1990, intended an offender's impending release into society as the trigger for SVP proceedings. The Task Force intended the legislation to close gaps that allowed dangerous sexual offenders to reenter society and commit additional crimes. *Young*, 122 Wn.2d at 10-11, 34; Norm Maleng, *The Community Protection Act and the Sexually Violent Predators Statute*, 15 U. PUGET SOUND L. REV. 821, 823 (1992); David Boerner, *Confronting Violence: In the Act and in the Word*, 15 U. PUGET SOUND L. REV. 525, 542-46 (1992). If another state files a detainer for the offender, Smith argues, the Washington community does not face the danger of his release into society. We disagree with this argument as well. If Washington foregoes SVP proceedings and allows the transfer of Smith and other offenders out of the state, it will lose its jurisdiction over them and its ability to civilly commit them. A person might serve his sentence in the

other state without intervening treatment, return to Washington, and commit additional crimes. The legislature sought to foreclose this possibility with the Community Protection Act.

¶15 Smith further contends that "about to be released from total confinement" must be construed as about to be released into the Washington community so that the statute does not infringe the liberty interests of offenders. A person may not be deprived of life, liberty, or property without due process of law. U.S. CONST., amends. V, XIV, WASH. CONST. art. I, § 3. "A state can limit even fundamental liberty interests by regulations (1) justified by a compelling state interest, and (2) narrowly drawn." *In re Schuoler*, 106 Wn.2d 500, 508, 723 P.2d 1103 (1986). The State has a compelling interest in treating sex predators and protecting society from their actions. *Young*, 122 Wn.2d at 26-27. While due process concerns require courts to construe laws limiting liberty interests to render them constitutional, they do not require this court to adopt the construction advocated by Smith. If the State does not initiate civil commitment proceedings against sexually violent predators such as Smith, it creates the serious risk that such predators will not receive necessary treatment and will return to Washington and commit further crimes against Washington residents. The requirement of narrow tailoring does not compel this court to accept Smith's interpretation of "about to be released from total confinement."

¶16 We next analyze Smith's argument that the prosecutor engaged in misconduct necessitating a mistrial when she was briefly overcome with emotion during opening statements. An appellate court reviews a trial court's decision to grant or not to grant a mistrial under an abuse of discretion standard. *State v. Escalona*, 49 Wn. App. 251, 254-55, 742 P.2d 190 (1987). By breaking into tears just after discussing the rape committed by Smith on an Easter Sunday, Smith argues, the prosecutor made a prejudicial appeal to the emotions of the jurors. "In presenting a criminal case to the jury, it is incumbent upon a public

prosecutor, as a quasi-judicial officer, to seek a verdict free of prejudice and based upon reason." *State v. Charlton*, 90 Wn.2d 657, 664, 585 P.2d 142 (1978).

¶17 Smith further argues that the prosecutor's misconduct requires a mistrial. "In general, prosecutorial misconduct requires a new trial when there is a substantial likelihood that the misconduct affected the jury's verdict." *State v. Copeland*, 130 Wn.2d 244, 284, 922 P.2d 1304 (1996). In determining whether a trial irregularity influenced the jury, a court may look at (1) the seriousness of the irregularity, (2) whether the statement in question was cumulative of other evidence properly admitted, and (3) whether the irregularity could be cured by an instruction to disregard the remark, an instruction which a jury is presumed to follow. *Escalona*, 49 Wn. App. at 254. He contends that because opening statements set the tone for a trial, the prosecutor's misconduct was serious. He additionally contends that the court's decision not to use an instruction to disregard left the jury with the uncorrected impression that the prosecutor was herself scared of him. We disagree.

¶18 The incident was not prosecutorial misconduct, as the incident was not intentional and the attorney acted to minimize its impact by hiding her emotion and quickly requesting a break in the proceedings. The incident likely had little or no effect because it occurred early in the proceedings before the presentation of evidence and closing statements and because it occurred during a discussion of facts that were not in dispute. The trial court declined to give an instruction to disregard, but the trial court correctly decided that the incident was already trivial in impact and that an instruction would only draw attention to it. The trial court did not abuse its discretion in declining to declare a mistrial.

¶19 Affirmed.

APPELWICK, A.C.J., and COOK, J. Pro Tem., concur.

Review denied at 157 Wn.2d 1022 (2006).