FILED
COURT OF APPEALS
DIVISION II

2013 APR -9 AM 9: 01

STATE OF WASHINGTON

BY_____
                 DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

|  |  |
|---|---|
| IN THE MATTER OF THE DETENTION OF: | No. 42292-1-II |
| PAUL ANDREW GEIER, | |
| | UNPUBLISHED OPINION |
| Petitioner. | |

WORSWICK, C.J. — Paul Andrew Geier appeals an order of civil commitment following a jury determination that he is a sexually violent predator. Geier argues that the trial court (1) erroneously denied his motion for a mistrial and (2) violated his right to a public trial. We affirm.

## FACTS

### A.    *Prior Bad Acts Evidence and Motion for Mistrial*

Before Geier's trial, the State filed a motion in limine, "based on ER 403, ER 608, and ER 609," to prohibit "any evidence of any alleged bad acts or crimes of any of [the State's] witnesses. . . . unless and until this Court rules such evidence admissible after an offer of proof or hearing is held outside the presence of the jury." Clerk's Papers (CP) at 666. Geier agreed to this motion, provided that it applied to both parties' witnesses, except Geier himself. The trial court entered an order in limine granting the motion as modified.

During the trial, both parties called expert witnesses to testify about whether Geier had a mental abnormality or personality disorder. The State called Dr. Harry Hoberman, a forensic

and clinical psychologist. Dr. Hoberman testified that he evaluated Geier and diagnosed him with pedophilia and antisocial personality disorder. Dr. Hoberman also opined that the diagnosed conditions and a lack of self-control made Geier more likely than not to commit more predatory acts of sexual violence, unless he was confined.

Geier called Dr. Robert Halon, a psychologist and marriage family therapist. Dr. Halon criticized some of the methods Dr. Hoberman had used to evaluate Geier. Dr. Halon also opined that Geier did not suffer from any personality disorder that would cause Geier to meet the criteria of a sexually violent predator.

On direct examination, Dr. Halon testified that he was "a licensed psychologist [in California] since 1977." 9 Verbatim Report of Proceedings (VRP) (June 7, 2011) at 958. On cross-examination, the State asked Dr. Halon whether he had entered into a stipulated order in a disciplinary action commenced by the California Board of Psychology. Dr. Halon answered affirmatively. Dr. Halon also testified that the stipulated order said it revoked his license, but that the order was immediately stayed. The State then asked about the underlying allegations in the disciplinary action.

Before Dr. Halon could answer, Geier objected and argued that the questioning violated the order in limine by referring to Dr. Halon's prior bad acts. Outside the presence of the jury, the State made an offer of proof that (1) the allegations involved failing to report a client's sex offense as required by law, incorrectly billing the state for services, and misrepresenting the results of tests; and (2) the stipulated order imposed three years of probation, and required Dr. Halon to take an ethics course and pay a fine. Contending that the offer of proof came too late to prevent the damage, Geier moved the trial court to declare a mistrial.

2

Even though the State elicited evidence from Dr. Halon regarding his prior disciplinary record before seeking a ruling by the trial court, the trial court denied the motion for mistrial. The trial court stated that the order did not prohibit the admission of all prior bad act evidence, but instead "meant that we would follow a procedure, which we are now following." 10 VRP (June 8, 2011) at 1204. The trial court determined that the State's questioning would yield "precisely the type of information that is allowed in order to have the jury fully and fairly evaluate the expert witness." 10 VRP (June 8, 2011) at 1204. Accordingly, the trial court overruled Geier's objection and allowed the State to inquire about the allegations for which Dr. Halon was disciplined.

After the parties rested, the jury returned a verdict finding that Geier was a sexually violent predator. The trial court then entered an order of commitment.

B.      *Voir Dire and Jury Questionnaires*

Before Geier's jury trial began, the trial court directed the potential jurors to complete a questionnaire, to which the parties agreed. The questionnaire required the potential jurors to identify themselves by name and "to disclose such sensitive information as whether they had been [victims] of sexual abuse or received mental health counseling." CP at 610; *see* CP at 702-10 (blank questionnaire). In open court, the trial court and the parties' counsel reviewed the completed questionnaires and conducted individual voir dire. After the verdict, the trial court entered an agreed order sealing the jury questionnaires and stating that the trial court conducted the analysis described in *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995), and *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 640 P.2d 716 (1982).

Geier appeals.

3

ANALYSIS

## I. MOTION FOR MISTRIAL

Geier first argues that the trial court erred in denying his motion for a mistrial. We disagree.

A trial court should grant a motion for mistrial only when the harmed party has been so prejudiced by an irregularity that only a new trial can remedy the error. *Kimball v. Otis Elevator Co.*, 89 Wn. App. 169, 178, 947 P.2d 1275 (1997). We review the denial of a motion for a mistrial for an abuse of discretion. *Adkins v. Aluminum Co. of Am.*, 110 Wn.2d 128, 136, 750 P.2d 1257 (1988). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *Dix v. ICT Group, Inc.*, 160 Wn.2d 826, 833, 161 P.3d 1016 (2007).

Geier contends that a new trial is required to remedy the irregularity that occurred when the State violated the order in limine by asking Dr. Halon about his disciplinary record without the trial court's prior approval. We disagree.[1]

A violation of an order in limine is not necessarily grounds for mistrial. *State v. Clemons*, 56 Wn. App. 57, 62, 782 P.2d 219 (1989). In determining whether an irregularity caused prejudice warranting a mistrial, we examine (1) the seriousness of the irregularity, (2) whether the irregularity involved cumulative evidence, and (3) whether the trial court gave a proper curative instruction. *State v. Hopson*, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989); *In re*

---

[1] Geier does not argue that the trial court made the wrong decision after the State submitted its offer of proof. Geier argues only that the questioning violated the motion in limine by proceeding to cross-examine Dr. Halon without *first* notifying the trial court about the alleged prior bad act and allowing the court to rule on the evidence's admissibility.

*Det. of Smith*, 130 Wn. App. 104, 113, 122 P.3d 736 (2005). Here, the parties do not dispute that the questioning did not elicit cumulative evidence and that the trial court gave no curative instruction. Thus, we examine only the seriousness of the irregularity here.

Citing *State v. Easter*, 130 Wn.2d 228, 242 n.11, 922 P.2d 1285 (1996), Geier argues that the State's violation of the order in limine was a serious irregularity warranting mistrial. But *Easter* is distinguishable. In *Easter*, an arresting officer testified that the defendant behaved like a "'smart drunk'" after a car accident, thus violating an order in limine prohibiting such commentary and insinuating the defendant's guilt. 130 Wn.2d at 242. Although the *Easter* court disapproved of the violation, it expressly declined to hold that *every* violation of an order in limine warrants a new trial. 130 Wn.2d at 242 n.11. Instead, the *Easter* court stated that a violation "*may* be so flagrantly prejudicial as to be incurable by instruction." 130 Wn.2d at 242 n.11 (emphasis added).

In contrast, the violation here was not nearly so serious. The State violated the order in limine by beginning to question Dr. Halon about a prior bad act before making the required offer of proof. When Geier objected, the State made the required offer of proof, and the trial court allowed the questioning to proceed. Unlike *Easter*, where the State elicited testimony that the trial court specifically excluded, here the jury heard evidence that the trial court ultimately admitted. Moreover, Geier does not argue that admission of the evidence was error.

Instead, Geier argues that the violation of the order in limine prejudiced him because (1) the jury heard the State's questioning before Geier could dispute the evidence's admissibility; (2) if Geier had known that Dr. Halon's disciplinary record would be an issue, Geier could have mitigated its impact by inquiring about it on direct examination; (3) the violation precluded the

5

trial court from conducting an ER 403 analysis; and (4) the prior bad act evidence was prejudicial to Geier's case. We hold that the violation did not cause any prejudice, let alone prejudice for which a new trial is the only available remedy.

First, Geier argues he suffered prejudice because he could not dispute the admissibility of prior bad act evidence before the State began questioning Dr. Halon about it. We disagree. After Geier objected, he still had a full opportunity to argue that the trial court should not admit the evidence. Because the trial court ultimately admitted the evidence, the State's premature questioning did not prejudice Geier.

Second, Geier argues that he was prejudiced by losing an opportunity to mitigate the prior bad act evidence by addressing it on direct examination. This argument fails because the order in limine required the offer of proof to come before the *questioning*; it did not require the offer of proof to come before Geier had finished direct examination. Thus the order did not secure Geier's opportunity to address the issue on direct examination.

Third, Geier contends that the violation "deprived Geier of the opportunity to argue that even if relevant, the probative value of the evidence was substantially outweighed by the danger of unfair prejudice." Reply Br. of Appellant at 6. This contention lacks merit. Again, Geier had an opportunity to make this argument to the trial court while contesting the admissibility of the prior bad act evidence. Even though the trial court reiterated that ER 403 was a basis of the order in limine, Geier did not argue that the danger of unfair prejudice substantially outweighed the probative value of the evidence.

Finally, Geier argues that he was prejudiced by the prior bad act evidence involving Dr. Halon, who was a key witness. But the State elicited admissible evidence of Dr. Halon's prior

bad acts. This is not an irregularity. Only prejudice resulting from an irregularity can be grounds for a mistrial. *See Kimball*, 89 Wn. App. at 178. Because the State's violation did not cause prejudice warranting a new trial, the trial court did not abuse its discretion in denying Geier's motion. *See Dix*, 160 Wn.2d at 833; *Adkins*, 110 Wn.2d at 136. Geier's argument fails.[2]

## II. RIGHT TO A PUBLIC TRIAL

Geier next argues that he is entitled to a new trial because the trial court violated the Washington Constitution when it sealed the jury questionnaires without conducting a sufficient *Bone-Club* analysis.[3] We disagree.

The Washington Constitution protects the public's right to the open administration of justice and a criminal defendant's right to a public trial. WASH. CONST. art. I, §§ 10, 22.[4] But

---

[2] For the first time in his reply brief, Geier argues that he was deprived the effective assistance of counsel because his trial attorney called Dr. Halon as an expert despite knowing of his prior disciplinary record. But this court does not consider arguments—even constitutional arguments—that are made for the first time in a reply brief. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992); *Oostra v. Holstine*, 86 Wn. App. 536, 543, 937 P.2d 195 (1997).

[3] In their briefs, both parties consented to postpone consideration of this appeal while our Supreme Court reviewed the decision in *State v. Beskurt*, 159 Wn. App. 819, 246 P.3d 580, *review granted*, 172 Wn.2d 1013 (2011). In addition, the State requested that the stay remain in effect pending review of *State v. Paumier*, 155 Wn. App. 673, 230 P.3d 212, *review granted*, 169 Wn.2d 1017 (2010). Because our Supreme Court has decided both cases, there is no longer any basis for a stay. *State v. Beskurt*, ___ Wn.2d ___, 293 P.3d 1159 (2013); *State v. Paumier*, 176 Wn.2d 29, 288 P.3d 1126 (2012).

[4] The State does not challenge Geier's assumption that article I, section 22 applies in this civil commitment trial. We recognize that article I, section 22 refers only to "criminal prosecutions," and Division One of this court has held that it does not apply in civil commitment trials. *In re Det. of Ticeson*, 159 Wn. App. 374, 381, 246 P.3d 550 (2011), *abrogated on other grounds by State v. Sublett*, 176 Wn.2d 58, 72, 292 P.3d 715 (2012). In addition, our Supreme Court has not resolved whether a defendant has standing to assert the public's right to the open administration of justice under article I, section 10. *State v. Wise*, 176 Wn.2d 1, 16 n.9, 288 P.3d 1113 (2012).

these rights are not absolute; a trial court may close a courtroom if closure is warranted under the five-part test set forth in *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995),[5] and *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 640 P.2d 716 (1982). Whether the closure of a proceeding violates article I, section 10 or section 22 of the Washington Constitution is a question of law reviewed de novo. *State v. Momah*, 167 Wn.2d 140, 147, 217 P.3d 321 (2009).

Geier is not entitled to a new trial, given our Supreme Court's decision in *State v. Beskurt*, ___ Wn.2d ___, 293 P.3d 1159 (2013). In *Beskurt*, the trial court sealed jury questionnaires without applying the *Bone-Club* test. 293 P.3d at 1160. A four-justice plurality and a separate concurrence by Justice Stephens each concluded, for two different reasons, that the defendants were not entitled to a new trial. *Beskurt*, 293 P.3d at 1162 (plurality opinion), 1168 (Stephens, J., concurring).[6] Both reasons defeat Geier's argument.

---

[5] The five criteria are:

> 1. The proponent of closure or sealing must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a "serious and imminent threat" to that right.
> 2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.
> 3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.
> 4. The court must weigh the competing interests of the proponent of closure and the public.
> 5. The order must be no broader in its application or duration than necessary to serve its purpose.

*Bone-Club*, 128 Wn.2d at 258-59 (quoting *Allied Daily Newspapers of Wash. v. Eikenberry*, 121 Wn.2d 205, 210-11, 848 P.2d 1258 (1993)) (alteration in original).

[6] Chief Justice Madsen, in another concurrence signed by two other justices, would have found that the defendants waived their public trial argument. *Beskurt*, 293 P.3d at 1166. Thus Chief Justice Madsen's opinion did not address the public trial argument.

First, under the reasoning of the *Beskurt* plurality, the *Bone-Club* test does not apply here because sealing jury questionnaires is not a courtroom closure. Although a trial court must apply the *Bone-Club* test before closing voir dire to the public, *State v. Paumier*, 176 Wn.2d 29, 35, 288 P.3d 1126 (2012), the plurality concluded that a trial court need not apply the *Bone-Club* test when sealing jury questionnaires that were completed before voir dire began. *Beskurt*, 293 P.3d at 1162. Here, the jury questionnaires were completed before voir dire began, and all voir dire questioning occurred in open court. Therefore, on the plurality's reasoning, sealing the jury questionnaires cannot have violated either the public's right to the open administration of justice or Geier's right to a public trial. *Beskurt*, 293 P.3d at 1162.

Second, under Justice Stephens's reasoning, sealing jury questionnaires is a courtroom closure but a new trial is unwarranted here even if the trial court failed to apply the *Bone-Club* test. *Beskurt*, 293 P.3d at 1166-67. Justice Stephens concluded that, when a trial court seals jury questionnaires after the trial has ended, a failure to apply the *Bone-Club* test is not grounds for a new trial. *Beskurt*, 293 P.3d at 1168. Here, the trial court sealed the jury questionnaires after the trial ended. Therefore a new trial is unwarranted here. *Beskurt*, 293 P.3d at 1168. Geier's argument fails.

9

No. 42292-1-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, C.J.

We concur:

_____
Van Deren, J.

_____
Penoyar, J.