IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>      v.<br><br>NGHIA NGUYEN aka<br>NHAN NGUYEN,<br><br>               Appellant. | No.  79911-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, J. — Nghia Nguyen appeals his conviction for two counts of second degree rape, one count of unlawful imprisonment with sexual motivation, one count of promoting the commercial sexual abuse of a minor, and one count of first degree promoting prostitution.  On appeal, Nguyen contends the trial court erred in failing to dismiss for governmental mismanagement based on a Brady[1] violation.  He also contends the trial court erred in denying his motion for mistrial based on a witness's improper statement.  In a statement of additional grounds for review, Nguyen also argues that he was denied a unanimous jury verdict and deprived of a speedy trial.  We reject all of these claims.  However, we agree that the court improperly imposed an indeterminate sentence for promoting the commercial sexual abuse of a minor.  Accordingly, we affirm Nguyen's conviction but remand for resentencing.

---

[1] Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

Citations and pin cites are based on the Westlaw online version of the cited material.

FACTS

Nghia Nguyen was arrested by Seattle police on February 13, 2017. He was subsequently charged with one count of second degree rape and one count of unlawful imprisonment with sexual motivation regarding S.V., one count of second degree rape and one count of promoting the commercial sexual abuse of a minor regarding M.S., and one count of first degree promoting prostitution regarding H.H.[2] At trial, witnesses testified to the following events.

S.V.

In October 2016, S.V. was 16 years old and living with her family in New Jersey. S.V.'s life was upended after she was raped by two coworkers and rejected by her church and family. In November 2016, S.V. stole money from her parents and bought a bus ticket to Seattle. At the Seattle bus terminal, S.V. met a man who gave her marijuana and convinced her to accompany him to a large homeless encampment in Seattle known as "Tent City" or "The Jungle." S.V. met several other people who introduced her to methamphetamine and cocaine use. One of them tried to convince S.V. to commit acts of prostitution, but she refused.

After a few weeks of "bouncing around," S.V. returned to the Jungle. There she met Nguyen, who went by the nickname "Asian Mike." S.V. eventually accepted Nguyen's invitation to stay with him in his tent. On the first night in the tent, Nguyen physically overpowered and forcibly raped S.V. S.V. said she stopped resisting Nguyen's demands for sex after that because "it seemed like something I had to do."

_____

[2] An additional charge of first degree rape regarding H.H. was severed prior to trial and later dismissed on the State's motion.

Nguyen told her she owed him sex because he was giving her food and shelter, and threatened to kill her if she tried to leave his tent without permission. This conduct formed the basis for one charge of second degree rape and one charge of unlawful imprisonment.

Bruce Watson, who lived in the Jungle and often purchased drugs from Nguyen, testified that he observed S.V. inside Nguyen's tent. He thought S.V. appeared fearful and was "cowering" in the back of the tent. Watson asked Nguyen who S.V. was, and Nguyen replied that she was his daughter.

On January 5, 2017, police received a tip that an endangered juvenile was staying in the Jungle with "Asian Mike." Police went to Nguyen's tent and located S.V. She initially identified herself to police as "Vicky" or "Victoria" but eventually provided her real name and age. After obtaining a search warrant for the tent, police recovered a pellet gun, drug paraphernalia, documents bearing Nguyen's name, and a cell phone containing pictures of Nguyen and S.V. together.

M.S.

M.S. moved from Idaho to the Seattle area with her mother when she was 12 years old. M.S.'s mother was working as a prostitute, and they mostly stayed in motels along Aurora Avenue in Seattle. In August 2016, when M.S. was 12 years old, she ran away from her mother and began living on the streets. She soon met a man named James Walker, who took her to the Jungle. Walker provided M.S. with heroin and methamphetamine and eventually forced her into prostitution. At some point, Walker "pass[ed] off control" of M.S. to Nguyen.

3

Nguyen once asked M.S. to drive with him to Portland, Oregon, to pick up drugs. Along the way, they stopped at Nguyen's sister's house. There, Nguyen tried to pressure M.S. into sex, but she repeatedly refused and he backed off. They left and went to a motel, where Nguyen gave M.S. methamphetamine and began touching her "aggressive[ly]." M.S. testified that Nguyen grabbed her by the neck and ripped her clothes off. M.S. said she cried, asked him to stop, and tried to push him off, but he slapped her, put his hand over her mouth, and forcibly raped her. This conduct formed the basis for a charge of second degree rape. M.S. was approximately 14 years old at that time.

M.S. did not see Nguyen for some time after that. She later returned to Nguyen's tent in the Jungle because she was suffering from withdrawal and he offered her drugs. M.S. was under Nguyen's control and stayed with him for a couple of weeks. During that time, other men would come to Nguyen's tent, and he told M.S. to have sex with them. M.S. recalled working as a prostitute for Nguyen on 10 or 11 occasions. Nguyen sometimes scared M.S. by pointing a gun at her. M.S. sometimes left Nguyen's tent but returned because she needed the drugs he provided. This conduct formed the basis for the charge of promoting the commercial sexual abuse of a minor.

One night, M.S. left Nguyen and went to Bruce Watson's tent. Watson thought M.S. looked frightened and exhausted. Watson testified that M.S. told him she was tired of being "bought and sold" for sex by Nguyen and others. Watson took M.S. to a friend's apartment and eventually reported her presence to the police.

M.S. later left Nguyen and returned to Walker. M.S. and S.V. both associated with Walker for a time until they got in an argument and S.V. left. S.V. later told police

about M.S.'s presence in the Jungle. Police located M.S. near the Jungle on January 25, 2017.

H.H.

H.H., now approximately 30 years old, was 16 when she ran away from a foster home in Idaho and came to Seattle. She quickly became addicted to alcohol and drugs and was forced into prostitution. Not long after arriving in Seattle, she met Nguyen by a park near the International District. He took H.H. to the Jungle and told her he had a gun and could protect her. Nguyen provided drugs to H.H. and demanded that she repay him by performing sexual favors for him or his friends. H.H. also worked as a prostitute for Nguyen and gave him the money she earned. Nguyen intimidated H.H. with physical violence or threats, and she was afraid of him. At some point, Nguyen ran off with another woman, and H.H. continued working as a prostitute for other pimps.

Around 2016, when she was in her late 20s, H.H. moved into an apartment in Seattle that was being used for prostitution. About two weeks later, Nguyen and others from the Jungle began hanging out in the apartment. H.H. saw Nguyen bringing S.V. to the apartment for sex. H.H. resumed working as a prostitute for Nguyen around that time. H.H. felt that she was under Nguyen's control and was afraid he would become violent if she disobeyed him. This conduct formed the basis for the charge of first degree promoting prostitution. In March 2017, H.H. contacted police and disclosed her relationship with Nguyen.

Nguyen's Testimony

Nguyen testified in his own defense. He admitted that he has been to prison for selling drugs and that he continued to sell drugs after his release. He acknowledged

meeting S.V. in the Jungle but claimed that S.V. came to him for help because someone else raped her. He denied ever spending the night with S.V., having sex with her, giving her drugs, or forcing her to do anything. He testified that H.H. owed him money but denied threatening her or acting as her pimp. Nguyen denied knowing M.S. at all.

<u>Motion To Dismiss for Governmental Misconduct</u>

S.V. testified on direct examination that Walker was "really nice" to her and let her sleep in his tent. She denied that Walker ever asked her to work as a prostitute. On cross-examination, S.V. denied trying to protect Walker by falsely telling investigators that Walker never had sex with her. On redirect, S.V. testified that Walker was like "family" to her and that their relationship ended after a fight with M.S.

The prosecutor then sought to elicit testimony that Walker had been prosecuted for prostitution of M.S. When the court asked the prosecutor why this information was relevant, he explained that defense counsel cannot imply that S.V. is protecting Walker now given that S.V. was extremely supportive of Walker being prosecuted. The prosecutor then revealed that S.V. had given a written statement that was used in the sentencing of Walker in a separate prosecution. In the letter, S.V. said Walker is a "monster" who raped her and that he "should be punished to the maximum of whatever is possible."

During a break in S.V.'s testimony, the prosecutor located the letter and provided it to defense counsel. After interviewing S.V. during a recess, he cross-examined her about the statement. S.V. explained that she said Walker raped her because she was too intoxicated to consent. She also acknowledged testifying that she was comfortable with Walker, despite having called him a "monster" in her letter.

6

Nguyen subsequently moved to dismiss under <u>Brady</u> and CrR 8.3(b) based on the State's failure to provide S.V.'s written statement to the defense prior to trial. The trial court denied the motion, finding neither a <u>Brady</u> violation nor a violation of CrR 8.3(b). Regarding <u>Brady</u>, the court reasoned that the letter was "[a]t best . . . impeachment on a collateral matter." Although the court described the State's late disclosure as "unacceptable," it ruled that Nguyen was not prejudiced because defense counsel was able to interview and effectively cross-examine S.V. and the defense theory of the case remained viable.

<u>Motion for Mistrial</u>

While discussing her life history during direct testimony, H.H. discussed earning her high school diploma and then taking a few online college credits. H.H. acknowledged that she was using drugs "pretty hard" at that time. The prosecutor then asked why she decided to take online college courses at that time. H.H. responded, "Um, I -- I -- I was going for criminal justice, and I was convinced to go to become a prison guard. So that if someone got in trouble and went to prison, I could sneak in cell phones and drugs." The prosecutor asked who convinced her to do that, and she responded "[t]he defendant."

Defense counsel immediately objected and moved to strike the testimony. The court sustained the objection and instructed the jury to disregard it. Nguyen subsequently moved for a mistrial. The court later denied Nguyen's motion:

> [F]irst of all, I granted the objection. It's been stricken at this point. Secondly, I don't think it's any more or less shocking than anything else that [H.H.] or either of these other two women have indicated occurred between themselves and your client. In fact, it's -- I think it's a lot less shocking than most of it. And I do think it's part of the relationship that they had.

7

. . . .

And so I don't find it particularly prejudicial.  I don't find it some bell that can't be unrung or something that the jurors can't disregard.

A jury convicted Nguyen on all counts as charged.  The judge imposed indeterminate sentences for the rape counts and for the count of promoting commercial sexual abuse of a minor.  Nguyen appeals.

ANALYSIS

Motion To Dismiss for Brady Violation

Nguyen asserts that the State's failure to disclose S.V.'s statement prior to trial violated the State's obligation under Brady and constituted governmental misconduct warranting dismissal under CrR 8.3.  We disagree.

The constitutional right to due process requires fundamental fairness and a meaningful opportunity to present a complete defense.  State v. Wittenbarger, 124 Wn.2d 467, 474-75, 880 P.2d 517 (1994).  A prosecutor's failure to disclose material evidence "favorable to an accused" violates that defendant's due process rights.  Brady, 373 U.S. at 87.  We review Brady claims de novo.  State v. Davila, 184 Wn.2d 55, 74, 357 P.3d 636 (2015).  To establish a Brady violation, the defendant must demonstrate the existence of three necessary elements: (1) "'[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching,' (2) 'th[e] evidence must have been suppressed by the State, either willfully or inadvertently,' and (3) the evidence must be material."  Davila, 184 Wn.2d at 69 (alterations in original) (quoting Strickler v. Greene, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999)).

A Brady violation may warrant dismissal pursuant to CrR 8.3(b). See, e.g. State v. Martinez, 121 Wn. App. 21, 86 P.3d 1210 (2004) (affirming dismissal for State's prejudicial failure to timely disclose material evidence). Under CrR 8.3(b), the court is authorized to "dismiss any criminal prosecution due to . . . governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial." CrR 8.3(b). To prevail on a CrR 8.3 motion to dismiss, the defendant must show by a preponderance of the evidence both (1) governmental misconduct and (2) actual prejudice. Martinez, 121 Wn. App. at 29. "[D]ismissal under CrR 8.3 is an extraordinary remedy, one to which a trial court should turn only as a last resort." State v. Wilson, 149 Wn.2d 1, 12, 65 P.3d 657 (2003). "A trial court's decision on a motion to dismiss under [CrR 8.3(b) ] is reviewed for manifest abuse of discretion." State v. Moen, 150 Wn.2d 221, 226, 76 P.3d 721 (2003). A trial court manifestly abuses its discretion when "no reasonable judge would have ruled as the trial court did." State v. Mason, 160 Wn.2d 910, 934, 162 P.3d 396 (2007).

We agree with the State that the disclosure of S.V.'s statement during trial, while untimely, was not material or prejudicial to Nguyen's defense.[3] "Evidence is material under Brady 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Davila, 184 Wn.2d. at 73 (internal quotation marks omitted) (quoting Kyles v. Whitley, 514 U.S. 419,

---

[3] The State also argued that S.V.'s letter was not "suppressed" within the meaning of Brady because it was disclosed during trial as opposed to after trial had concluded. The State acknowledges that no Washington opinion has expressly considered the analytical difference for Brady purposes between disclosure during trial or after trial, but urges that we adopt the prevailing federal standard. Because we conclude that there is no reasonable probability that the result of the proceeding would be different had the letter been timely disclosed, we need not reach this issue.

433-34, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995)).  A reasonable probability exists if the suppression of the evidence "'undermines confidence in the outcome of the trial.'" Davila, 184 Wn.2d at 73 (internal quotation marks omitted) (quoting Kyles, 514 U.S. at 434).

Here, defense counsel was able to interview S.V. and cross-examine her in detail.  The court noted that defense counsel's cross-examination "was incredibly effective, hurt her testimony significantly, and made a, as I sat here, an impressive impact on the jury."  During closing argument, defense counsel used discrepancies between S.V.'s letter and her testimony at trial to argue that S.V. was not credible.  Moreover, it appears that S.V. had already stated during defense interviews that Walker raped her by having sexual intercourse with her while she was under the influence of drugs and unable to consent.  Although Nguyen asserts that the late disclosure prevented counsel from being adequately prepared to cross-examine S.V., it is unclear how his cross-examination would have differed or how his defense would have materially changed.  The letter referenced only Walker, whom the defense was already aware of, and M.S., who testified almost two weeks after S.V.  While Nguyen claims earlier disclosure may have led to a different investigation, this claim is purely speculative.  "The mere *possibility* that an item of undisclosed evidence *might* have helped the defense or might have affected the outcome of the trial . . . does not establish 'materiality' in the constitutional sense."  State v. Kwan Fai Mak, 105 Wn.2d 692, 704-05, 718 P.2d 407 (1986).

Under these circumstances, we cannot say there is a reasonable probability the outcome of the trial would be different if the State had disclosed S.V.'s statement prior

to trial. The untimely disclosure did not constitute a <u>Brady</u> violation. For the same reasons, Nguyen has failed to demonstrate prejudice warranting dismissal under CrR 8.3(b). The trial court did not abuse its discretion in denying Nguyen's motion to dismiss.

<u>Motion for Mistrial</u>

Nguyen asserts that H.H.'s challenged testimony was a serious trial irregularity that warranted a mistrial. We disagree.

We review a trial court's denial of a mistrial for abuse of discretion. <u>State v. Emery</u>, 174 Wn.2d 741, 765, 278 P.3d 653 (2012). Abuse of discretion occurs "'when no reasonable judge would have reached the same conclusion.'" <u>State v. Hopson</u>, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989) (quoting <u>Sofie v. Fibreboard Corp.</u>, 112 Wn.2d 636, 667, 771 P.2d 711, 780 P.2d 260 (1989)).

"A trial court's denial of a mistrial motion will be overturned only when there is a substantial likelihood that the error affected the jury's verdict." <u>State v. Garcia</u>, 177 Wn. App. 769, 776, 313 P.3d 422 (2013). A mistrial should be granted "'only when the defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly.'" <u>State v. Rodriguez</u>, 146 Wn.2d 260, 270, 45 P.3d 541 (2002) (quoting <u>Kwan Fai Mak</u>, 105 Wn.2d at 701). In determining the effect of a trial irregularity, we examine "(1) its seriousness; (2) whether it involved cumulative evidence; and (3) whether the trial court properly instructed the jury to disregard it." <u>Hopson</u>, 113 Wn.2d at 284.

Nguyen argues that H.H.'s statement regarding Nguyen telling her to get a degree in criminal justice so she could smuggle drugs and cell phones into prison was a

11

serious trial irregularity. He likens his case to State v. Escalona, 49 Wn. App. 251, 742 P.2d 190 (1987), but that case is distinguishable. In Escalona, the defendant was on trial for second degree assault with a deadly weapon, a knife. 49 Wn. App. at 252. He successfully moved in limine to exclude his prior conviction for the exact same crime. Escalona, 49 Wn. App. at 252. At trial, the victim testified that he knew the defendant "'already has a record and had stabbed someone.'" Escalona, 49 Wn. App. at 253. The trial court denied the defendant's motion for a mistrial and instructed the jury to disregard the comment. Escalona, 49 Wn. App. at 253. This court reversed, holding that the irregularity was incurably prejudicial because the improper evidence related to the same misconduct as the charged crime. Escalona, 49 Wn. App. at 256.

The incurable prejudice in Escalona arose largely because the improper testimony implicating a propensity to commit the crime for which the defendant was charged. Here, in contrast, H.H.'s testimony regarding Nguyen's desire to obtain drugs in prison does not logically indicate a propensity to commit sex crimes. Moreover, unlike Escalona, any evidence suggesting that Nguyen sold drugs was cumulative. The jury heard a great deal of testimony regarding Nguyen's sale and use of illegal drugs throughout the trial. Any prejudice arising from the statement was not incurable.

"A trial court has wide discretion to cure trial irregularities resulting from improper witness statements." State v. Gamble, 168 Wn.2d 161, 177, 225 P.3d 973 (2010). The trial court properly instructed the jury to disregard H.H.'s comment. Juries are presumed to follow the trial court's instructions. State v. Williams, 159 Wn. App. 298, 321, 244 P.3d 1018 (2011). We conclude that the trial court did not abuse its discretion in denying Nguyen's mistrial motion.

Indeterminate Sentence

Nguyen argues that the trial court erred by imposing an indeterminate sentence for promoting the commercial sexual abuse of a minor. The State concedes that Nguyen is entitled to resentencing on this count. A trial court commits reversible error by exceeding its sentencing authority. State v. Murray, 118 Wn. App. 518, 522, 77 P.3d 1188 (2003). The court's legal authority to impose a particular sentence is reviewed de novo. State v. Church, 5 Wn. App. 2d 577, 580, 428 P.3d 150 (2018), review denied, 192 Wn.2d 1020 (2019).

RCW 9.94A.507(1)(a) lists offenses subject to indeterminate sentencing. Promoting the commercial abuse of a minor is not on the list. In addition, RCW 9.94A.507(1)(b) mandates indeterminate sentencing for any defendant with "a prior conviction for an offense listed in [ ]RCW 9.94A.030(31)(b), and is convicted of any sex offense other than failure to register." Nguyen has no relevant prior convictions. We therefore accept the State's concession and remand for resentencing on this count.

Statement of Additional Grounds

In a statement of additional grounds for review, Nguyen claims that he was unconstitutionally convicted by a nonunanimous jury. He contends that on the last day of trial, prior to deliberations, the court failed to replace an absent juror for deliberations, resulting in a nonunanimous decision of only 11 jurors. Nguyen correctly notes that a criminal defendant charged in superior court has a state constitutional right to be tried by 12 jurors. WASH. CONST. art. I, § 21; CrR 6.1(b); State v. Stegall, 124 Wn.2d 719, 728, 881 P.2d 979 (1994). However, the record clearly indicates that the absent juror was replaced by an alternate and that Nguyen was in fact convicted by 12 jurors.

13

Nguyen also claims that the 24-month delay before trial requires dismissal.[4] Criminal defendants have a constitutional right to a speedy trial. U.S. CONST. amend, VI; WASH. CONST. art. I, § 22. We review questions of constitutional speedy trial rights de novo. State v. Iniguez, 167 Wn.2d 273, 280-81, 217 P.3d 768 (2009).

To determine whether a speedy trial violation occurred, we apply the balancing test set out in Barker v. Wingo, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). In order to trigger the Barker analysis, the defendant must show presumptively prejudicial delay. Barker, 407 U.S. at 530. Although Washington courts have not adopted a bright line rule for when the delay is presumptively prejudicial, our Supreme Court has found that eight months was "just beyond the bare minimum needed to trigger the Barker inquiry." Iniguez, 167 Wn.2d at 293. If a defendant meets this threshold test, the court then considers a number of factors to determine if the delay constitutes a constitutional violation: (1) the length of the delay, (2) the reason for the delay, (3) whether and to what extent the defendant asserted his speedy trial rights, and (4) whether the delay caused prejudice to the defendant. Barker, 407 U.S. at 530-32.

Here, the delay exceeds the bare minimum necessary to pass the threshold test. But the Barker analysis indicates that no constitutional violation occurred. First, although the delay was sufficient to trigger the Barker analysis, it was not exceptionally long in light of the relatively complicated nature of the case. See State v. Ollivier, 178 Wn.2d 813, 828-29, 312 P.3d 1 (2013) (describing a number of speedy trial challenges involving delays ranging from 21 months to 58 months as not "exceptionally long").

---

[4] Nguyen asserted that the delay was 29 months. The record does not support this assertion.

Second, all of the continuances attached to Nguyen's statement of additional grounds indicate that defense counsel sought the continuances to enable defense investigation and preparation for trial. Nguyen asserts that the continuances violated his speedy trial rights because he refused to sign them. But a continuance sought to enable counsel to investigate or prepare for trial is binding on the defendant even if the defendant objects to the continuance. Ollivier, 178 Wn.2d at 824 (citing CrR 3.3(f)(2)).

Third, Nguyen did repeatedly assert his right to a speedy trial by objecting to continuances sought by his own attorney. But because his right to counsel was furthered by counsel's requests to obtain continuances in order to prepare his defense, this factor does not weigh in Nguyen's favor. See Ollivier, 178 Wn.2d at 840-41.

Fourth, Nguyen has not established prejudice. The delay was not lengthy enough to constitute "extreme delay" creating a presumption of prejudice. See Ollivier, 178 Wn.2d at 843-44. Nor has he demonstrated particularized prejudice such as oppressive pretrial incarceration, undue anxiety and concern, or an impairment of his defense. See Ollivier, 178 Wn.2d at 844-45 (citing Doggett v. United States, 505 U.S. 647, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992)).

In sum, we affirm Nguyen's convictions but remand for resentencing on his conviction for promoting the commercial sexual abuse of a minor.

Affirmed in part and remanded.

_____

WE CONCUR:

_____          Andrus, A.C.J. _____