**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54212-9-II |
| Respondent, | |
| v. | |
| DARRELL JAMES KOHLSTAEDT, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, A.C.J.—Darrell James Kohlstaedt asked an acquaintance, Kendra Nestegard, to steal his ex-girlfriend's truck. Nestegard stole the truck and when Kohlstaedt told her to get rid of the truck, Nestegard lit the truck on fire.

At trial, Kohlstaedt's ex-girlfriend, Kelsey Shank, briefly referred in her testimony to the fact that Kohlstaedt had previously been in prison. Kohlstaedt moved for a mistrial. The trial court denied the motion and instructed the jury to disregard the reference to prison. During deliberations, the jury asked a question about this instruction. The trial court responded that the jury must disregard any testimony regarding prison. Finally, during closing, the prosecutor argued that Kohlstaedt was an accomplice to the arson because the arson was a reasonable outcome of his instruction to get rid of the truck. The jury convicted Kohlstaedt of theft of a motor vehicle but could not reach a decision on the arson charge.

Kohlstaedt argues that the trial court abused its discretion when it denied his motion for a mistrial. Kohlstaedt also contends that the trial court commented on the evidence when it responded to the jury's question. Kohlstaedt further argues that the State's "reasonable outcome" comments were prosecutorial misconduct that require reversal.

In calculating Kohlstaedt's offender score at sentencing, the trial court included prior convictions for possession of a controlled substance. The State concedes that Kohlstaedt must be resentenced as a result of *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021).

We affirm Kohlstaedt's conviction. However, we remand for the trial court to recalculate Kohlstaedt's offender score and resentence him in light of *Blake*.

## FACTS

### I. UNDERLYING CRIME

Kohlstaedt and Shank were living together, but their dating relationship was over, and Kohlstaedt was in the process of moving out. One night, Kohlstaedt and Shank argued and Kohlstaedt left. By the next morning, Kohlstaedt had returned. Later that day, Shank discovered that her truck and a key to the truck were missing.

That same morning, firefighters were called to extinguish a truck that was on fire in a rural area. A firefighter found a phone near the burning truck that he turned over to the police. The police determined the phone belonged to Nestegard. The police found messages on the phone between Nestegard and Kohlstaedt about the theft and destruction of the truck.

The police met with Nestegard and she agreed to provide a recorded statement. Nestegard then entered into a plea agreement in which she agreed to testify against Kohlstaedt. The State charged Kohlstaedt with theft of a motor vehicle and second degree arson.

A couple weeks after Shank's truck was stolen, Shank agreed to meet with Kohlstaedt. During their conversation, Kohlstaedt talked about being "on the run" and he threatened to commit "suicide by cop" if the police confronted him. 2 Verbatim Report of Proceedings (VRP) at 92-93. The police ultimately arrested Kohlstaedt without incident.

## II. TRIAL

A.    Motions

The trial court granted several pretrial motions that excluded evidence and discussion of the defendant's prior arrests and convictions. The trial court granted a motion to suppress "[e]vidence related to the defendant's criminal history" if Kohlstaedt did not testify. Clerk's Papers (CP) at 91. The trial court granted Kohlstaedt's requests that no one mention the use of booking photos, the warrants that were out for Kohlstaedt's arrest, or that Kohlstaedt was a codefendant with Shank in a separate proceeding. The trial court also severed a separate charge of second degree unlawful possession of a firearm, noting that it would require presentation of evidence of prior felonies.

Kohlstaedt also sought to exclude testimony about Shank's conversation with Kohlstaedt where he threatened to attempt "suicide by cop." 1 VRP at 38. The State presented an offer of proof, and Shank testified consistent with the facts about this conversation stated above. In the offer of proof, Shank did not mention that Kohlstaedt said anything about having previously been to prison.

The trial court concluded that Shank could testify about this conversation and the "suicide by cop" comment because it reflected consciousness of guilt. However, the trial court instructed Shank to focus on the questions and only answer the question asked. The trial court also told Shank that she could not mention warrants or that she was a codefendant with Kohlstaedt in another case.

B.    Trial Court's Initial Instructions

At the start of the trial, the court instructed the jury "to apply the law from my instructions" and that remarks by the attorneys are not the law, "[t]he law is contained in my instructions to you.

You must disregard anything the lawyers say that is at odds with the evidence or the law in my instructions." 2 VRP at 66-67.

The trial court explained that one of its duties was to decide if evidence should be admitted for the jury's consideration. The trial court instructed the jury to "not be concerned about the reasons for my rulings" and to "not consider or discuss any evidence that I do not admit or that I tell you to disregard." 2 VRP at 67-68.

Finally, the trial court explained that the Washington Constitution

> prohibits a trial judge from making comments on the evidence. . . . [I]t would be improper for me to express by words or conduct my personal opinion about the value of a particular witness's testimony or an exhibit. I will not intentionally do this. If it appears to you that I have indicated in any way my personal opinion concerning any evidence, you must disregard this entirely.

2 VRP at 68.

C.    Testimony

At trial, Shank testified that she fought with Kohlstaedt the day before the theft and that he left, but he returned by morning. Shank explained that when Kohlstaedt returned, he was acting strangely. Kohlstaedt shut the bedroom window and put music on, things that he did not usually do. Kohlstaedt was on his phone a lot, texting and watching videos. That day, Shank discovered her truck had been stolen. Shank also testified there was a stereo in her truck that Shank believed was a gift from Kohlstaedt, but she would have been happy to return the stereo to Kohlstaedt had he asked.

At the start of the second day of her testimony, the trial court reminded Shank to focus on the questions and not to talk about other criminal proceedings or any warrants. Shank testified that

after her truck was stolen and destroyed, she met Kohlstaedt and confronted him about taking her

truck, but that the conversation turned into an argument:

[Prosecutor]: So you guys are arguing?

[Shank]: Mm-hm, yes.

[Prosecutor]: What is he saying before the incident that we're referring to that we're going to get to?

[Shank]: That he wasn't going to go back to prison again and that it wasn't his fault, he didn't do it, and that he never told her to torch the truck, this and that. He said that he would die before he went to go -- or before he went back to prison or something. I don't remember exactly verbatim. And he shot a gun off, and he said he would suicide by cop.

3 VRP at 151.

Kohlstaedt objected and moved for a mistrial. Outside of the presence of the jury,

Kohlstaedt argued Shank's testimony about prison was a violation of the motions in limine to

exclude any reference to Kohlstaedt's criminal history. Kohlstaedt acknowledged the trial was

stressful for Shank and it did not appear Shank intended to say anything inappropriate. But this

reference to Kohlstaedt's criminal history, Kohlstaedt argued, was not something that the jury

could forget.

The State did not dispute that the reference to a prior prison sentence was inadmissible

under the trial court's evidentiary rulings. But the State opposed mistrial and argued instead for a

limiting instruction.

The trial court noted it had not instructed Shank to avoid mentioning prison, but the court

would have if anyone had anticipated her testimony. The trial court explained that it took

Kohlstaedt's motion seriously, but it determined that the reference to prison did not require a

mistrial because the disclosure was not "so damaging [that it] takes away the ability of the [d]efense to argue its theory of the case." 3 VRP at 156. The trial court offered to either issue an instruction to disregard the reference to prison or move forward without mentioning it again if the defendant preferred. Kohlstaedt opted for the limiting instruction.

The trial court reminded the jury of the objection and said, "Part of the [witness's] response was that allegedly the defendant was afraid of going back to prison." 3 VRP at 160. The trial court instructed the jury "to disregard that entirely. You're not to consider it as evidence in this case. And the [c]ourt is instructing you to, again, just disregard it and not consider it in any way, shape, or form as evidence in this case or testimony in this case." *Id.*

Nestegard also testified about her role in the theft and burning of the truck. The night before the theft, Nestegard needed a ride home, so she reached out to Kohlstaedt for help. Kohlstaedt picked up Nestegard, but instead of taking her home, they drove around and returned to Shank's house a couple of times throughout the night. During one of the stops at Shank's house, Kohlstaedt went inside to get the truck key. Kohlstaedt asked Nestegard to drive Shank's truck to a friend's house, remove the truck's stereo, and wait for him. Kohlstaedt told Nestegard that he would distract Shank inside while Nestegard got the truck.

In the early morning, Nestegard and Kohlstaedt returned to Shank's house. Nestegard used the key Kohlstaedt had taken to steal the truck. After taking the truck to the friend's house, Nestegard received a message from Kohlstaedt to "'[g]et rid of that truck and all the clothes that you were wearing.'" 3 VRP at 216. Kohlstaedt then stopped responding to Nestegard's messages. Nestegard drove to the woods until the truck ran out of gas and then set the truck on fire. Nestegard explained that she burned the truck because Kohlstaedt told her to get rid of it.

D.      Jury Instructions and Closing

Prior to closing, the trial court reiterated its instructions to the jury—the law is contained in the court's instructions; the lawyers' arguments are intended to help the jury apply the law; the jury must disregard any remark or statement not supported by the law provided in the instructions; the state constitution prohibits the trial court from commenting on the evidence; it is improper for the trial court to express its personal opinions; and if it appeared to the jury that the trial court ever indicated its personal opinion during trial or in the instructions, the jury must disregard that entirely.

The trial court also instructed the jury on accomplice liability, explaining:

> A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of the crime, he or she either, one, solicit, commands, encourages, or requests another person to commit the crime, or, two, aids or agrees to aid another person in planning or committing the crime.

4 VRP at 326-27.

During closing, while discussing accomplice liability for the arson charge, and the knowledge element in particular, the prosecutor argued that "[b]urning is a way of getting rid of something. It is in the realm of a *reasonable outcome* that you can expect as part of an instruction to get rid of something." 4 VRP at 338 (emphasis added). In rebuttal, when the prosecutor returned to the arson charge, he stated, "The question is, is burning the truck a *reasonable* and potential outcome of the crime that he directed her to commit." 4 VRP at 366 (emphasis added). Kohlstaedt objected. The trial court responded, "All right. Your objection is noted for the record." 4 VRP at 366. The prosecutor continued and again stated, "[I]n this case the arson is a *reasonable outcome* from his command to get rid of that truck." 4 VRP at 367 (emphasis added). Kohlstaedt objected

again. The trial court responded, "The jury is going to be instructed, as they already have been, to consider opening and closing argument as simply argument." 4 VRP at 368.

E.      Jury Deliberations

During deliberations, the jury asked, "During the testimony of [Shank], we were asked to strike part of the testimony referring to the conversation near the R.R. tracks, which part of that testimony is admissible?" CP at 150. Kohlstaedt proposed that the trial court tell the jury that "they have all the information that they have" because "any more information would [not] be appropriate." 4 VRP at 373. The trial court reasoned, "Somebody must know there was something said about prison, and they're probably wondering whether or not that was the one thing . . . they were told to disregard." 4 VRP at 374. Kohlstaedt reiterated his position that Shank's reference to prison should not be repeated. The trial court disagreed and told the jury, "You were instructed not to consider any reference to prison in your deliberations." CP at 150.

The jury also asked, "In Instruction No. 8, does 'the crime' refer to both charges as a collective or [two] separate crimes?" CP at 178. In response, the trial court stated, "Instruction No[.] 8 can be applicable to both counts. However, it is the jury[']s decision to decide if it applies to either count." *Id.*

The jury found Kohlstaedt guilty of theft of a motor vehicle – domestic violence. But the jury could not reach a verdict on the arson charge, so the trial court declared a mistrial for that count.

Kohlstaedt appeals.

ANALYSIS

I. MOTION FOR MISTRIAL

Kohlstaedt argues that the trial court erred when it denied Kohlstaedt's motion for a mistrial because Shank's testimony that Kohlstaedt said he "'wasn't going back to prison'" was inherently prejudicial. Br. of Appellant at 16. We conclude that the trial court did not abuse its discretion when it denied Kohlstaedt's motion for a mistrial.

A.      Standard of Review

When a defendant appeals a trial court's denial of a motion for a mistral, we review the decision for an abuse of discretion. *State v. Allen*, 159 Wn.2d 1, 10, 147 P.3d 581 (2006). An abuse of discretion occurs when the trial court's decision is contrary to law, manifestly unreasonable or based on untenable grounds. *State v. Sassen Van Elsloo*, 191 Wn.2d 798, 807, 425 P.3d 807 (2018).

We only overturn a trial court's decision to deny a motion for mistrial when "there is a substantial likelihood that the prejudice affected the verdict." *State v. Gamble*, 168 Wn.2d 161, 177, 225 P.3d 973 (2010). When there is a trial irregularity due to a witness's improper testimony, the court has significant discretion when it comes to curing that irregularity. *Id*. A curative instruction can be sufficient to remove any prejudicial effect. *Id*.

The ultimate question is whether, when considering all the evidence, the witness's improper testimony was so prejudicial that the defendant would not receive a fair trial. *Id*. To decide the prejudicial effect of a trial irregularity, we consider: (1) the seriousness of the irregularity, (2) whether the irregularity involved cumulative evidence, and (3) whether the trial court properly instructed the jury to disregard the irregularity. *Id*. We evaluate these factors with

deference to the trial court because the trial court is in the best position to discern prejudice. *State v. Garcia*, 177 Wn. App. 769, 776-77, 313 P.3d 422 (2013).

Violating a pretrial order is a serious irregularity, but an unintentional disclosure is less serious than the intentional introduction of inadmissible evidence. *Gamble*, 168 Wn.2d at 178. And improper testimony from a lay witness is less serious than from someone who must regularly testify as part of their job. *Id.* We presume jurors follow the trial court's instruction to disregard improper evidence, unless there is evidence on the record to the contrary. *State v. Kirkman*, 159 Wn.2d 918, 928, 155 P.3d 125 (2007).

B.      The Trial Court Did Not Err

Kohlstaedt argues Shank's testimony that Kohlstaedt had been in prison was a serious irregularity because the testimony was inadmissible under ER 404(b) and the trial court's pretrial ruling. Kohlstaedt also argues the testimony informed the jury that Kohlstaedt had a history of committing serious crimes. Kohlstaedt notes this testimony was not cumulative with any other evidence.

Kohlstaedt further argues that this case is similar to *State v. Escalona*, 49 Wn. App. 251, 742 P.2d 190 (1987). In that case, where Escalona was accused of second degree assault with a knife, the trial court granted Escalona's motion to exclude any mention of his prior conviction of second degree assault with a knife, "precisely the same crime." *Id.* at 252. At trial, the victim testified that Escalona "'already has a record and had stabbed someone.'" *Id.* at 253. Escalona immediately moved for a mistrial, and the trial court denied the motion but instructed the jury to disregard the victim's answer. *Id.*

Division One concluded that the trial court abused its discretion by denying the request for a mistrial because "the seriousness of the irregularity . . . combined with the weakness of the State's case and the logical relevance of the statement, leads to the conclusion that the court's instruction could not cure the prejudicial effect of [the victim's] statement." *Id.* at 256. The court also noted that the victim's statement was not cumulative with any other evidence. *Id.* at 255.

In the wake of *Escalona*, courts have made it clear that a mere reference to a defendant's prior time in prison or jail is not automatically grounds for a mistrial. In *State v. Hopson*, a witness testified that the defendant had served time, and the trial court denied the defendant's motion for a mistrial. 113 Wn.2d 273, 284, 778 P.2d 1014 (1989). This irregularity was not serious enough to impact the outcome of the trial because the jury had no information on the nature or number of convictions. *Id.* at 286. The defendant conceded he had committed the crime and was only contesting whether he had diminished capacity. *Id.* The witness's testimony was not cumulative at that point because the defendant's criminal record had not been introduced. *Id.* The trial court properly instructed the jury to disregard the testimony, and juries are presumed to follow instructions. *Id.* at 287. The Washington Supreme Court therefore held that the trial court did not abuse its discretion when it denied the motion for mistrial. *Id.*

Similarly, in *State v. Condon* a reference to the defendant's time in jail was not sufficient for a mistrial in a murder case. 72 Wn. App. 638, 649-50, 865 P.2d 521 (1993). Despite the trial court's ruling that references to Condon's jail time should be excluded, a witness testified twice that Condon had been in jail. *Id.* at 648. Division One distinguished *Escalona*, explaining that there, a witness testified Escalona had committed the same crime, but in *Condon*, the witness's reference to the defendant's time in jail was ambiguous and did "not indicate a propensity to

commit murder." *Id.* at 649. The jury could have merely concluded that the defendant had been in jail for a minor offense and being in jail did not necessarily mean the defendant had been convicted. *Id.* Also, unlike *Escalona*, the State's case was strong and not a "'close case.'" *Id.* at 650 n.2 (quoting *Escalona*, 49 Wn. App. at 256).

Here, Kohlstaedt's case is more similar to *Condon* and *Hopson* than *Escalona*. Regarding the seriousness of the irregularity, Shank only testified that Kohlstaedt told her "he wasn't going to go back to prison again" and "that he would die before he went to go -- or before he went back to prison or something." 3 VRP at 151. Like *Condon* and *Hopson*, this reference only indicated that the defendant had been incarcerated, it did not indicate that the defendant had been convicted of a particular crime, or that any prior crime was similar to the one at issue in this case. *Hopson*, 113 Wn.2d at 286; *Condon*, 72 Wn. App. at 649. We note that this is a serious irregularity given the trial court's pretrial order, but there is no indication that Shank's disclosure was intentional or that anyone was seeking to introduce inadmissible evidence. *Gamble*, 168 Wn.2d at 178. A disclosure in violation of a pretrial ruling is not grounds for an automatic reversal. *Condon*, 72 Wn. App. at 648. The State's case was also relatively strong. Nestegard testified that Kohlstaedt asked her to take the truck, Shank testified that Kohlstaedt was acting strangely the morning the truck was stolen, Shank's key was missing, messages supported Nestegard's version of events, and a message showed Kohlstaedt telling Nestegard to get rid of the truck.

There was no other evidence referencing Kohlstaedt's criminal history, which is a factor favoring mistrial. *Escalona*, 49 Wn. App. at 255. However, the cumulative evidence factor is not dispositive. *See Condon*, 72 Wn. App. at 648-50.

Finally, the trial court properly instructed the jury to disregard Shank's testimony that Kohlstaedt said he was afraid to go back to prison. The trial court also instructed the jury at the start of the trial that the jury should not be concerned about the reasons for its rulings and to not consider evidence that they were told to disregard. We presume jurors follow the trial court's instruction to disregard improper evidence, unless there is evidence on the record to the contrary. *Kirkman*, 159 Wn.2d at 928. And Kohlstaedt fails to identify any evidence that the jury disregarded that instruction. In fact, the record reflects that the jury remembered the instruction and wanted to confirm what they could not consider during deliberations.[1]

We conclude that the trial court did not abuse its discretion when it denied Kohlstaedt's motion for a mistrial.

## II. COMMENT ON THE EVIDENCE

During deliberations, the jury asked, "During the testimony of [Shank], we were asked to strike part of the testimony referring to the conversation near the R.R. tracks, which part of that testimony is admissible?" CP at 150. The trial court responded, "You were instructed not to consider any reference to prison in your deliberations." *Id.*

Kohlstaedt argues that the trial court impermissibly commented on evidence when it responded to the jury's question. Kohlstaedt contends that the trial court's response conveyed a negative opinion of Kohlstaedt's character to the jury. We conclude that the trial court did not improperly comment on the evidence.

---

[1] The State also argues that Shanks's statement did not violate ER 404(b) because it was not offered as propensity evidence. But this is contrary to the State's position below, and we need not reach this issue given our conclusion that the trial court did not abuse its discretion when it denied the motion for mistrial.

A.    Judicial Comments

Under article IV, section 16 of the Washington Constitution, a trial court is prohibited from "'conveying to the jury his or her personal attitudes toward the merits of the case'" or "instructing a jury that 'matters of fact have been established as a matter of law.'" *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006) (quoting *State v. Becker*, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997)). The court's personal feelings do not need to be expressly conveyed to be improper; it is sufficient if the feelings are merely implied. *Id.* For there to be a comment on the evidence, "it must appear that the trial court's attitude toward the merits of the cause is reasonably inferable from the nature or manner of the court's statements." *State v. Miller*, 179 Wn. App. 91, 107, 316 P.3d 1143 (2014). To determine if the trial court's words or actions are a comment on the evidence, a reviewing court must consider the facts and circumstances of the case. *State v. Jacobsen*, 78 Wn.2d 491, 495, 477 P.2d 1 (1970). Because a judicial comment on the evidence is an error of constitutional magnitude, such claims may be raised for the first time on appeal. RAP 2.5; *Levy*, 156 Wn.2d at 719-20.

B.    The Trial Court Did Not Err

As an initial matter, the State argues Kohlstaedt invited any error because Kohlstaedt requested the instruction to disregard testimony about Kohlstaedt not wanting to go back to prison. But invited error is inapplicable here.

"'Under the doctrine of invited error, a party may not materially contribute to an erroneous application of law at trial and then complain of it on appeal.'" *In re Dependency of A.L.K.*, 196 Wn.2d 686, 694-95, 478 P.3d 63 (2020) (quoting *In re Det. of Rushton*, 190 Wn. App. 358, 372, 359 P.3d 935 (2015)). Kohlstaedt asked for the instruction to disregard at the time the prison reference was first made and only after the trial court denied his motion for a mistrial. In contrast,

when discussing the proper response to the jury's question, Kohlstaedt asked the trial court to respond that "they have all the information that they have." 4 VRP at 373. And after the trial court indicated it was going to include the word "prison" in its answer, Kohlstaedt again said that he did not want the reference to prison repeated.

Even so, Kohlstaedt fails to establish the trial court commented on the evidence. The trial court did not use language that unduly expressed disapproval of Kohlstaedt. In fact, the trial court did not make any reference to Kohlstaedt in its answer. The trial court never conveyed a personal opinion of the facts or merits of the case. Nor was a personal opinion implied. Nothing about the answer to the jury's question conveys that the trial court felt one way or another about the evidence. The trial court merely responded with a short and plain answer.

The trial court's instructions also provided a safeguard against the jury inferring anything about how the court viewed Kohlstaedt. At the beginning of the trial, the court said that its role was to consider whether evidence should be admitted and the jury should not be concerned with the reasons behind any ruling. The jury heard that the trial court was prohibited from commenting on the evidence and that the court would not intentionally convey its opinion. The trial court reiterated these instructions prior to deliberations. And because there is no evidence to the contrary, we presume the jurors followed the trial court's instruction. *Kirkman*, 159 Wn.2d at 928.

Kohlstaedt reasons that because the jury asked, we can infer they had forgotten about the prison reference and the trial court's answer reintroduced inadmissible and highly prejudicial evidence of Kohlstaedt's criminal history by repeating its curative instruction. The jury's question specifically referenced the trial court's instruction to strike testimony, so it is clear the jury remembered there was an instruction to disregard testimony. And there is no basis in the record to

indicate that the jury had forgotten the witness's reference to prison. The question merely asked which part of Shank's testimony was admissible. Kohlstaedt fails to demonstrate that the trial court's instruction reintroduced the reference to prison in a way that commented on the evidence.

We conclude that the trial court did not improperly comment on the evidence when it responded to the jury's question.

## III. PROSECUTORIAL MISCONDUCT

Kohlstaedt contends the State committed prosecutorial misconduct when the prosecutor used reasonable outcome to describe, in part, the burden to establish accomplice liability for the arson because this suggested a lower burden of proof than actual knowledge. We conclude that Kohlstaedt has not established the prejudice necessary to warrant reversal.

A.      Background on Prosecutorial Misconduct and Accomplice Liability

For a defendant to prove prosecutorial misconduct, they must establish "'the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.'" *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011) (internal quotation marks omitted) (quoting *State v. Magers*, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)). If the defendant objected at trial, then they are required to demonstrate the prosecutor's statement "resulted in prejudice that had a substantial likelihood of affecting the jury's verdict." *State v. Allen*, 182 Wn.2d 364, 375, 341 P.3d 268 (2015).

RCW 9A.08.020(3)(a)(ii) provides that accomplice liability applies if the accomplice with knowledge acts in a way that will "promote or facilitate the commission of the crime" or "[a]ids or agrees to aid [another] person in planning or committing" the crime. *In re Pers. Restraint of Sandoval*, 189 Wn.2d 811, 825-26, 408 P.3d 675 (2018). A jury can infer "actual knowledge"

16

when the person "'has information which would lead a reasonable person in the same situation to believe' that he was promoting or facilitating the crime eventually charged." *Allen*, 182 Wn.2d at 374 (quoting RCW 9A.08.010(1)(b)(ii)).

B.      The Prosecutor's Comments Were Not Prejudicial

During closing, the prosecutor argued, with regard to the arson charge, "Burning is a way of getting rid of something. It is in the realm of a *reasonable outcome* that you can expect as part of an instruction to get rid of something." 4 VRP at 338 (emphasis added). In rebuttal, the prosecutor stated, "The question is, is burning the truck a *reasonable and potential outcome* of the crime that he directed her to commit." 4 VRP at 366 (emphasis added). Later in the rebuttal, the prosecutor again stated, "[I]n this case the arson is a *reasonable outcome* from his command to get rid of that truck." 4 VRP at 367 (emphasis added). Kohlstaedt objected to both arguments in the rebuttal. After Kohlstaedt's second objection, the trial court reminded the jury that the prosecutor's statements were arguments only.

Kohlstaedt acknowledges the State's comments were only in reference to the arson charge and Kohlstaedt was not found guilty on that charge. But Kohlstaedt argues he was still prejudiced because the jury could have relied on the reasonable outcome standard when it found Kohlstaedt guilty of theft of a motor vehicle as an accomplice.

Even if the prosecutor's comments were improper, there was no prejudice because there is no substantial likelihood that the outcome would have been different. The allegedly improper comments were only in the context of the arson charge. And the prosecutor never used the "reasonable outcome" language when arguing the theft charge.

17

Further, there is clear evidence that Kohlstaedt had actual knowledge of the theft under RCW 9A.08.020(3)(a)(ii), and he directed Nestegard to take the truck. Nestegard testified that Kohlstaedt took the key to the truck, gave the key to her, and asked her to take the truck to a friend's house without Shank's permission to remove the stereo equipment. The jury also saw a later message from Kohlstaedt telling Nestegard to get rid of the truck.

Finally, the jury is presumed to follow the court's instructions. *Kirkman*, 159 Wn.2d at 928. And the trial court twice instructed the jury that they should apply the law from the court's instructions, not the lawyer's statements. The trial court reminded the jury of this in rebuttal. There is no indication that the jury disregarded this instruction.

Kohlstaedt argues that the jury question asking, "In Instruction No. 8, does 'the crime' refer to both charges as a collective or [two] separate crimes?" shows prejudice because it establishes "that the jury was confused about whether the prosecutor's arguments regarding accomplice liability also applied to the theft." Br. of Appellant at 24-25; CP at 178. But this question does not establish that the prosecutor's reasonable outcome argument, which was made only in the context of the arson charge, caused the jury to apply an incorrect standard to the theft charge. Kohlstaedt fails to demonstrate that the prosecutor's comments regarding the arson charge, even if incorrect, infected the jury's guilty verdict on the theft charge. *Allen*, 182 Wn.2d at 375. We hold that Kohlstaedt fails to prove the prosecutor's comments resulted in prejudice that had a substantial likelihood of affecting the jury's verdict regarding the theft of a motor vehicle.

## IV. SENTENCE

The State concedes that Kohlstaedt is entitled to be resentenced because his offender score included convictions for unlawful possession of a controlled substance. We agree.

In *Blake*, the Supreme Court held that Washington's strict liability drug possession statute, RCW 69.50.4013(1), violates state and federal due process clauses and is therefore void. 197 Wn.2d at 195. A conviction based on an unconstitutional statute cannot be considered in calculating the offender score. *See State v. Ammons*, 105 Wn.2d 175, 187-88, 713 P.2d 719, 718 P.2d 796 (1986). Accordingly, Kohlstaedt is entitled to be resentenced because his offender score included unconstitutional convictions.

## CONCLUSION

We affirm Kohlstaedt's conviction. However, we remand for the trial court to recalculate Kohlstaedt's offender score and for resentencing in light of *Blake*.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, A.C.J.

We concur:

Sutton, J.

Veljacic, J.