[Nos. 16248–9–I; 16271–3–I.   Division One.   September 8, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. ALBERTO RAMOS ESCALONA, *Appellant.*

*Eric J. Nielsen* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *David Reeve, Marion J. Mittet,* and *Donna Wise, Deputies,* for respondent.

PEKELIS, J.—Alberto Escalona appeals his conviction for second degree assault with a deadly weapon. His sole claim on appeal is that the trial court erred in denying his motion for a mistrial when the victim testified regarding Escalona's "record."

Alberto Escalona was charged with second degree assault while armed with a deadly weapon, a knife. Prior to trial, the court granted a defense motion in limine to exclude any mention or reference to Escalona's prior conviction for precisely the same crime.

Phillipe Vela testified that Escalona lived with him in his apartment for 8 or 10 days, and then Vela asked him to leave. Escalona became upset, and while in the course of gathering his things, he grabbed a knife belonging to Vela and threatened to kill him. Vela initially testified that he did not recognize the knife the State produced at trial, but after some confusing testimony, due in part to an error by the interpreter assisting him, he testified that it was the knife he saw Escalona holding. Vela also testified that

Escalona had said he had a pistol, but that he, Vela, did not see it. Later, he testified that he *did* see a gun. Vela watched Escalona as he left and observed that Escalona did not open the trunk, but just got in the driver's door and drove off.

Vela testified further that his girl friend had been with him at his apartment when Escalona arrived to pack. She testified, in contrast, that she first saw Vela earlier that day at her home and did not arrive at his apartment until after the police had arrived. She said Vela was frightened and upset at that time.

During cross examination Vela was asked about a prior occasion on which he had been assaulted with a knife. Vela had stated to the police that he was very nervous when he saw Escalona with the knife because of the prior assault. The following exchange took place between defense counsel and Vela:

Q. Back in 1981 were you assaulted with a knife?
A. Yes.
Q. You were stabbed on the street, is that right?
A. Yes.
Q. By several people.
A. Four.
Q. By four people?
A. Yes.
Q. Not Mr. Escalona?
A. No.
Q. That was before you knew Mr. Escalona?
A. Yes.
Q. And you were very nervous on this particular day, is that correct?
A. This is not the problem. Alberto already has a record and had stabbed someone.

Defense counsel immediately moved to strike and asked that the jury be excused. The judge ordered the statement stricken and excused the jury. In view of the violation of the order in limine, defense counsel moved for a mistrial, which was denied. When the jury was brought back, the judge instructed the jury to disregard Vela's last answer.

Escalona testified and denied that he had argued with or

threatened Vela or that he had told him he had a gun. When he was taken into custody, he gave the police permission to search his vehicle and volunteered, prior to the search, that there was a knife in the trunk. Escalona testified that the knife was one he used at the restaurant where he worked as a cook, and that he carried it, rather than leaving it at work, because he was used to taking care of his own tools. He denied taking the knife into Vela's apartment that day and testified that he kept the knife with an ice scraper inside a pillowcase in the trunk of his car. He also testified that he did not make any stops between leaving Vela's apartment and the time of his arrest.

The police testimony corroborated much of Escalona's testimony. He was arrested 15 to 18 minutes after the police were called by Vela, and they found a knife inside a pillowcase in the bottom of the trunk, underneath some clothing and bedding, but no gun was found.

The jury returned a verdict of guilty. Subsequently, a revocation hearing was held on his prior assault conviction, for which he had received a suspended sentence. After Escalona admitted that he had been convicted of assaulting Vela and that he had changed his residence without authorization, his suspended sentence was revoked.

■ The single substantive issue presented here is whether Vela's remark, when viewed against the backdrop of all the evidence, so prejudiced the jury that Escalona was denied his right to a fair trial. If it did prejudice the jury, the remark warranted a mistrial. *See State v. Weber,* 99 Wn.2d 158, 164–65, 659 P.2d 1102 (1983). In looking at a trial irregularity to determine whether it may have influenced the jury, the *Weber* court considered, without setting forth a specific test, (1) the seriousness of the irregularity, (2) whether the statement in question was cumulative of other evidence properly admitted, and (3) whether the irregularity could be cured by an instruction to disregard the remark, an instruction which a jury is presumed to follow. *Weber,* 99 Wn.2d at 165–66. Since the trial judge is best suited to determine the prejudice of the statements,

the appellate court reviews the decision to grant or not to grant a mistrial under an abuse of discretion standard. *Weber,* 99 Wn.2d at 166.

In analyzing the issue before us, we first characterize the unsolicited statement by Vela that "Alberto already has a record and had stabbed someone" as extremely serious. Our rules of evidence embody an express policy against the admission of evidence of prior crimes except in very limited circumstances and for limited purposes. *See* ER 609, ER 404(b). Furthermore, the reference to Escalona's record becomes particularly serious considering the paucity of credible evidence against Escalona. Vela's testimony, which was essentially the State's entire case, contained many inconsistencies. There were no other witnesses to the alleged crime except Escalona himself, whose testimony was not substantially impeached.

The second *Weber* factor, whether the statement was cumulative, also cuts against the trial court's ruling, since Vela's statement was not cumulative or repetitive of other evidence. In fact, the trial judge had ruled in limine that the prior conviction could not be admitted.

The difficult question, however, is whether the court's oral instruction to the jury to disregard the statement could cure the error. While it is presumed that juries follow the court's instruction to disregard testimony, *see Weber,* no instruction can "remove the prejudicial impression created [by evidence that] is inherently prejudicial and of such a nature as to likely impress itself upon the minds of the jurors." *State v. Miles,* 73 Wn.2d 67, 71, 436 P.2d 198 (1968); *see also State v. Suleski,* 67 Wn.2d 45, 51, 406 P.2d 613 (1965); *State v. Morsette,* 7 Wn. App. 783, 789, 502 P.2d 1234 (1972).[1]

There is no question that the evidence of Escalona's prior

---

[1] *Miles* involved testimony by a police officer of an alleged plan by the defendant to commit a duplicate robbery to the one charged, and thus is factually analogous to the instant case in that the testimony at issue was about the commission of a similar crime.

conviction for having "stabbed someone" was "inherently prejudicial." *See State v. Saltarelli,* 98 Wn.2d 358, 362, 655 P.2d 697 (1982). The information imparted by the statement was also of a nature likely to "impress itself upon the minds of the jurors" since Escalona's prior conduct, although not "legally relevant," appears to be "logically relevant." *See State v. Holmes,* 43 Wn. App. 397, 399–400, 717 P.2d 766, *review denied,* 106 Wn.2d 1003 (1986). As such, despite the court's admonition, it would be extremely difficult, if not impossible, in this close case for the jury to ignore this seemingly relevant fact. Furthermore, the jury undoubtedly would use it for its most improper purpose, that is, to conclude that Escalona acted on this occasion in conformity with the assaultive character he demonstrated in the past. *See Saltarelli,* 98 Wn.2d at 362.

While we recognize that in the determination of whether a mistrial should have been granted, "[e]ach case must rest upon its own facts," *Morsette,* 7 Wn. App. at 789 (quoting *State v. Albutt,* 99 Wash. 253, 259, 169 P. 584 (1917)), the seriousness of the irregularity here, combined with the weakness of the State's case and the logical relevance of the statement, leads to the conclusion that the court's instruction could not cure the prejudicial effect of Vela's statement. Accordingly, under the factors outlined in *Weber,* we hold that the trial court abused its discretion in denying Escalona's motion for mistrial.

■ With respect to the revocation of Escalona's suspended sentence, we recognize that it was based only in part on this conviction. Although the cases cited by Escalona holding that a new hearing is required involve situations in which the revocation was based *solely* on the new conviction, *see State v. Dowell,* 26 Wn. App. 629, 632, 613 P.2d 197, *review denied,* 94 Wn.2d 1018 (1980); *State v. Christopher,* 20 Wn. App. 755, 763, 583 P.2d 638 (1978), where, as here, the only other violation was the technical one of failing to obtain his probation officer's permission to change his residence, we find that remand is also appropriate. The revocation of probationary status is within the

sound discretion of the trial court, *State v. Riddell*, 75 Wn.2d 85, 87, 449 P.2d 97 (1968), and the trial court should be given the opportunity to determine if the facts as altered by our decision still warrant its conclusion. *See Riddell*, 75 Wn.2d at 89.

We therefore reverse the conviction and remand for both a new trial and revocation hearing.

RINGOLD, A.C.J., and WILLIAMS, J., concur.

Reconsideration denied October 7, 1987.