

## IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>v.<br><br>SEAN PAUL KELLY,<br><br>               Appellant. | No. 75656-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: November 6, 2017 |

LEACH, J. — Sean Kelly appeals his conviction for second degree burglary and possession of a controlled substance. He challenges the trial's court denial of his motion for a mistrial after a witness testified about a third party's out-of-court statements. Because this testimony was cumulative of other evidence and the court's instruction cured any potential prejudice, the trial court did not abuse its discretion in denying Kelly's motion. We affirm.

### Background

Solid Ground provides housing and social services for low-income and homeless individuals and families. It operates a housing facility in several buildings on an old naval base in Seattle's Magnuson Park. In February 2016, Solid Ground was renovating one of its buildings. Crate & Barrel donated to it 50 to 75 boxes of items to furnish the renovated units. It stored the boxes in the basement of the building.

Sometime between Friday, February 26, 2016, and Monday, February 29, 2016, someone entered the basement of the unoccupied building, opened every

box, dumped the contents on the floor, and broke some items. On Monday, Solid Ground staff discovered this and called 911.

Surveillance footage showed several people, including Kelly, moving around inside the building and leaving it over the weekend. Kelly did not reside at Solid Ground, but Solid Ground employees reported seeing him around the complex. Police contacted Kelly as a suspect. Kelly explained that he was helping a woman move and had entered the building through a window to get some boxes for her. The police arrested Kelly. When they searched him, they found two clonazepam pills in his hat.

Later, after Solid Ground evicted tenant Bradley Minks and his family, employees found boxes of the donated items from the basement in Minks's unit.

The State charged and tried Kelly for burglary in the second degree and possession of a controlled substance. At trial, the State questioned Ryan Rodriguez, a case manager who worked at the complex, about how he knew Kelly. Rodriguez testified that he had seen Kelly with Minks and Minks's family at the complex before the burglary and that Kelly was staying in the unit with Minks's family. He then uttered the following unsolicited statement, "And the only reason I know—the only reason I say that he lived [in the building] is that Bradley Minks had mentioned that after the incident.

Defense counsel immediately objected and moved to strike this testimony. The trial court sustained the objection and instructed the jury "to disregard anything that the witness testified that some third person said." The trial court denied

defense counsel's request for a mistrial. A jury convicted Kelly of both counts. Kelly appeals.

## Analysis

Kelly challenges the trial court's denial of his mistrial motion. A trial court should grant a mistrial based on an irregularity at trial only when the irregularity so prejudices the defendant that nothing short of a new trial can provide the defendant with a fair trial.[1] "In determining whether a trial court abused its discretion in denying a motion for a mistrial, we examine (1) the seriousness of the irregularity, (2) whether the statement was cumulative of other properly admitted evidence, and (3) whether the irregularity could be cured by an instruction."[2] Because the trial court is in the best position to determine if an irregularity at trial prejudiced the defendant, it has broad discretion to grant or deny a mistrial based on those irregularities.[3] A trial court abuses its discretion only if it makes a manifestly unreasonable decision or bases its decision on untenable grounds.[4]

The irregularity here was not very serious. Courts have found irregularities serious when the jury has heard inadmissible testimony that is inherently prejudicial. For example, in State v. Escalona,[5] an assault case, a witness mentioned the defendant's prior conviction for the same offense in violation of an

---

[1] State v. Wade, 186 Wn. App. 749, 773, 346 P.3d 838 (quoting State v. Kwan Fai Mak, 105 Wn.2d 692, 701, 718 P.2d 407 (1986)), review denied, 184 Wn.2d 1004 (2015).

[2] Wade, 186 Wn. App. at 773.

[3] Wade, 186 Wn. App. at 773.

[4] State v. Allen, 159 Wn.2d 1, 10, 147 P.3d 581 (2006).

[5] 49 Wn. App. 251, 253, 742 P.2d 190 (1987).

order in limine. This court found the irregularity "extremely serious" because of the inherently prejudicial nature of evidence of prior crimes and the lack of other credible evidence against the defendant.[6] Similarly, in State v. Babcock,[7] Division Three found the admission of hearsay testimony about a dismissed child molestation charge in a child rape case to be an extremely serious irregularity.

Kelly contends that the testimony here was inherently prejudicial because it was like evidence of prior bad acts.[8] He claims the testimony created a direct connection between him and the stolen property. Kelly asserts that because the testimony indicates that he committed the crimes of theft and possession of stolen property, it improperly showed that he likely also committed the burglary. Although the jury could extrapolate from Rodriguez's statement that Kelly lived with Minks and draw some inference about Kelly's involvement in the theft of the donated goods, the inconspicuous nature of the testimony is not as prejudicial as the prior assault conviction in Escalona or the child molestation charge in Babcock. While Rodriguez's testimony about Kelly living with Minks is relevant to the case, the prejudice here does not rise to the level of the irregularities in Escalona or Babcock.

We further distinguish this case from Escalona and Babcock because testimony from Rodriguez did not comprise the State's entire case. In those cases, the irregularity occurred during testimony from the State's key witnesses.[9] But

---

[6] Escalona, 49 Wn. App. at 255.

[7] 145 Wn. App. 157, 161-62, 163-64, 185 P.3d 1213 (2008).

[8] "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." ER 404(b).

[9] Escalona, 49 Wn. App. at 255 (noting the testimony "was essentially the State's entire case" and "contained many inconsistencies"); Babcock, 145 Wn.

here, other strong evidence connected Kelly to the burglary. Surveillance footage showed Kelly near the scene of the crime, and multiple witnesses gave admissible testimony about Kelly's association with Minks. This other evidence makes any potential prejudice to Kelly minimal.

Further, Rodriguez's testimony was cumulative of other evidence. In particular, Solid Ground program manager Tamara Brown Spiller testified she recognized Kelly because he had stayed with Minks. And other testimony indicated an association between Kelly and Minks. Rodriguez testified that he had seen Kelly with Minks and Minks's family at the complex before the burglary. Kelly's own witness testified that Kelly spent time at Minks's residence. Rodriguez's inadmissible testimony merely repeated what other evidence directly and indirectly showed.

Finally, the trial court's instruction to the jury cured the irregularity. After Rodriguez testified as to Minks's statements, the court immediately instructed the jury to disregard testimony about third party statements. We presume that juries follow the court's instructions.[10] The instruction did not "unduly emphasize the testimony,"[11] and the irregularity was not "'inherently prejudicial and of such a nature as to likely impress itself upon the minds of the jurors.'"[12] Thus, the court's

---

App. at 164 (where the verdict depended solely on the jury's credibility determinations about testimony that was at times inconsistent).

[10] Escalona, 49 Wn. App. at 255.

[11] State v. Gamble, 168 Wn.2d 161, 178, 225 P.3d 973 (2010).

[12] Escalona, 49 Wn. App. at 255 (quoting State v. Miles, 73 Wn.2d 67, 71, 436 P.2d 198 (1968)).

instruction adequately cured the irregularity here. The court properly denied Kelly's motion for a mistrial.

Kelly asks this court to deny the State appellate costs based on his indigency. We generally award appellate costs to the substantially prevailing party on review. However, when a trial court makes a finding of indigency, that finding continues throughout review "unless the commissioner or clerk determines by a preponderance of the evidence that the offender's financial circumstances have significantly improved since the last determination of indigency."[13] Here, the trial court found Kelly indigent. If the State has evidence indicating significant improvement in Kelly's financial circumstances since the trial court's finding, it may file a motion for costs with the commissioner.

Conclusion

Because the improper testimony was cumulative of other evidence and the court's instruction cured any potential prejudice, the trial court did not abuse its discretion in denying Kelly's mistrial motion. We affirm.

Leach, J.

WE CONCUR:

Cox, J.

Becker, J.

---

[13] RAP 14.2.