# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51239-4-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| YEVGENIY RODYGIN, | |
| Appellant. | |

MAXA, C.J. – Yevgeniy Rodygin appeals his conviction of possession of a stolen motor vehicle, which arose from an incident in which he took his former girlfriend Annette Brown's car without her permission.

We hold that (1) the trial court did not admit Brown's statement and in fact struck the statement, and therefore Rodygin's argument that the court erred in admitting the statement has no merit; and (2) the trial court did not err in denying Rodygin's mistrial motion because Rodygin cannot show that there was a substantial likelihood that Brown's improper statement affected the jury's verdict.[1]  Accordingly, we affirm Rodygin's conviction.

## FACTS

Rodygin was in an on and off relationship with Brown for several months, and they lived together for a time.  By January 2016 they had broken up permanently.  On January 8, Rodygin showed up at Brown's apartment in Seattle and they argued.  Brown asked Rodygin to leave, but

---

[1] Rodygin also assigns error to the trial court's denial of his motion for a new trial.  But he presents no argument on this issue.  Therefore, we do not address this assignment of error.  RAP 10.3(a)(6); *State v. Cherry*, 191 Wn. App. 456, 464 n.3, 362 P.3d 313 (2015).

he refused. Brown then left and went to a friend's house. Brown left her car at the apartment and did not give Rodygin permission to drive it.

Later that day, Rodygin told Brown that he had taken her car. Brown told him that he did not have permission to drive her car and demanded that he return it. She also reported to the police that her car had been stolen.

Brown found out that Rodygin had driven the car to Portland. Rodygin said that he would bring the car back to Seattle. As he was driving back and while he was on the phone with Brown, Rodygin encountered a police officer at a gas station. Rodygin ultimately handed the phone to the officer so he could speak directly with Brown, and she told him that Rodygin had taken her car without her permission. The officer confirmed that Brown had reported the car as stolen and placed Rodygin under arrest.

The State charged Rodygin with possession of a stolen motor vehicle. Rodygin entered a diversion program, which required him to sign a declaration admitting to possessing Brown's car with knowledge that the car was stolen and that he had the car without Brown's permission. However, Rodygin did not complete the diversion program.

Rodygin filed a pretrial motion in limine to exclude testimony of any other alleged bad acts that were not relevant to the State's case. The State agreed with the motion. The court stated in an oral ruling on the motion that Brown's testimony should be limited to the argument between her and Rodygin and finding that the car was gone when she returned to her apartment.

At trial, Brown testified that she knew her car was gone because she had received text messages from Rodygin. She then stated that when she came home after learning that Rodygin had taken her car, "all of my stuff was gone in my house." Report of Proceedings (RP) at 131. Rodygin did not object, but he immediately asked for a conference outside the jury's presence.

2

Rodygin moved for a mistrial on the basis that the testimony violated the court's ruling on the motion to exclude evidence of other bad acts. The State agreed that the answer should be stricken and asked the court to give a curative instruction.

The trial court denied Rodygin's motion for a mistrial. The court issued a curative instruction asking the jury to disregard Brown's statement that all of her stuff was gone from her house and stated that it was striking the statement from the record. The court also stated, "[Y]ou don't know . . . if that has anything to do with this case or Mr. Rodygin, so please disregard that." RP at 135.

The declaration that Rodygin signed as part of the diversion program was entered into evidence and read to the jury. The declaration stated in part:

> I, Yevgeniy Rodygin . . . did knowingly receive, retain, possess, conceal, or dispose of a stolen motor vehicle . . . belonging to Annette Brown knowing that this property had been stolen.
> . . . .
> I had Annette Brown's 2004 Jeep Liberty in my possession. She had given me permission to drive it on previous occasions but had not given me permission on that day.

RP at 162-63.

The jury found Rodygin guilty of possession of a stolen motor vehicle. At sentencing Rodygin made an oral motion for a new trial based on Brown's statement about stuff being gone from her house. The trial court denied Rodygin's motion. Rodygin appeals his conviction.

## ANALYSIS

A.    ADMISSION OF IMPROPER STATEMENT

Rodygin argues that the trial court erred in admitting Brown's statement that all her stuff was gone from her house in addition to her car. He asserts that her statement was improper because it violated the trial court's in limine order precluding such testimony.

There is no dispute that Brown's statement violated the trial court's in limine order. However, the trial court did not admit Brown's statement into evidence. After Rodygin moved for a mistrial, the court expressly directed the jury not to consider the statement and stated that it was striking the statement from the record. Therefore, we hold that the trial court did not err in this regard.

B.      MOTION FOR MISTRIAL

Rodygin argues that the trial court erred in denying his motion for a mistrial based on Brown's improper testimony. We disagree.

1.      Legal Principles

We review a trial court's denial of a mistrial motion for an abuse of discretion. *State v. Emery*, 174 Wn.2d 741, 765, 278 P.3d 653 (2012). A trial court's denial of a mistrial is an abuse of discretion only when no reasonable judge would have reached the same conclusion. *Id.*

"A trial court's denial of a mistrial motion will be overturned only when there is a substantial likelihood that the error affected the jury's verdict." *State v. Garcia*, 177 Wn. App. 769, 776, 313 P.3d 422 (2013). The determinative issue is whether the defendant has been so prejudiced that a new trial is required to treat the defendant fairly. *Emery*, 174 Wn.2d at 765.

In evaluating whether a trial irregularity warrants a mistrial, we consider three factors: (1) the seriousness of the irregularity, (2) whether the irregularity involved cumulative evidence, and (3) whether the trial court properly instructed the jury to disregard the evidence. *Id.* We take a balancing approach in assessing the factors, which are designed to determine whether there is a substantial likelihood that the irregularity affected the jury's verdict. *Garcia*, 177 Wn. App. at 783. And these factors are considered with deference to the trial court because the trial court is in the best position to discern prejudice. *Id.* at 776-77.

2.    Analysis

Brown testified that when she returned home after learning that Rodygin had taken her car, all of her stuff was gone.  This testimony potentially was prejudicial because it implied that Rodygin committed other thefts in addition to the charge of possessing a stolen motor vehicle.  A witness's improper statement about a defendant's prior bad acts may be a serious irregularity. *State v. Babcock*, 145 Wn. App. 157, 163-64, 185 P.3d 1213 (2008).

But here, the seriousness of the improper statement was diminished by the overwhelming evidence against Rodygin.  Brown testified that she had not given Rodygin permission to take her car and told him that he did not have permission.  And Rodygin admitted in a declaration read to the jury that he possessed Brown's vehicle knowing that it had been stolen and that Brown had not given him permission to take the car.  Therefore, evidence implying that Rodygin may have stolen other items from Brown would not likely affect the outcome of the trial.

Further, the trial court struck Brown's statement from the record and instructed the jury to disregard it.  The court also told the jury that it was not known whether the statement had anything to do with this case or with Rodygin.  The trial court has broad discretion to cure trial irregularities when the alleged error is an improper statement by a testifying witness.  *State v. Gamble*, 168 Wn.2d 161, 177, 225 P.3d 973 (2010). The court's instruction here was sufficient to avoid a mistrial.

Rodygin relies on *State v. Escalona*, 49 Wn. App. 251, 742 P.2d 190 (1987).  In that case, a witness improperly testified that the defendant had a criminal record and had stabbed someone. *Id.* at 253.  The court held that a curative instruction given to the jury was insufficient to ensure a fair trial.  *Id.* at 256.  The court stated that the improper statement was very serious because it described propensity behavior very similar to the charged crime and was likely to impress itself

5

on the minds of the jurors. *Id.* at 255-56. But unlike in *Escalona*, Brown did not testify that Rodygin had been convicted of a crime similar to the one charged. She merely implied that Rodygin had taken some stuff.

We conclude that Rodygin cannot demonstrate that there is a substantial likelihood that Brown's improper statement affected the jury's verdict. Accordingly, we hold that the trial court did not abuse its discretion in denying Rodygin's mistrial motion.

CONCLUSION

We affirm Rodygin's conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, C.J.

We concur:

MELNICK, J.

SUTTON, J.