IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON | No. 85620-1-I |
| Respondent, | |
| | DIVISION ONE |
| v. | |
| | UNPUBLISHED OPINION |
| DYLAN TYLER HEINS, | |
| Appellant. | |

SMITH, C.J. — In April 2022, Dylan Heins robbed Terry DeWitt with a shotgun. While in jail, Heins sent a letter to his brother, asking him to pay DeWitt to revoke her identification of him. The State charged Heins with robbery in the first degree, unlawful possession of a firearm in the first degree, and witness tampering. At trial, outside the presence of the jury, the court granted a motion to strike testimony about Heins holding a shotgun and possessing a pistol. When the jury returned, the court's curative instruction only addressed testimony concerning the pistol. Heins did not object to the instruction. The jury found Heins guilty of all three counts. Heins appeals, arguing his right to a fair trial was violated and he received ineffective assistance of counsel. Because Heins failed to object to the instruction at trial, we hold that he failed to preserve that issue for appeal and we decline to reach it. And although his counsel's representation fell below an objective standard of reasonableness, Heins did not suffer any prejudice because of it. Therefore, we affirm.

FACTS

On April 8, 2022, around 4:00 a.m., Terry DeWitt returned home to the WoodSpring Hotel after work. While walking from her car to the hotel, an individual wearing a hoodie and a red bandana over their face approached her. The individual said "hi" before pulling a shotgun from their right side and holding it up to DeWitt. DeWitt could only see the individual's eyes but could tell the person was male, Caucasian, and medium height. The man told DeWitt to hand over her money. When DeWitt did not comply, he grabbed her wallet out of her purse. He then asked for DeWitt's keys, which she refused.

During this interaction, DeWitt noticed a woman with long brown, curly hair, standing off to her left. DeWitt heard this woman yell out "Dylan, Dylan, Dylan." DeWitt recognized the voice as that of Oxalis Jorge, a woman she had met in jail and to whom she regularly sold drugs. DeWitt knew Jorge had a relationship with a man named Dylan, and suspected the man with the shotgun was that Dylan. The man with the shotgun, still aimed at DeWitt, yelled at Jorge to "[s]hut the fuck up." The man then told DeWitt to turn around and walk to her car. DeWitt turned and ran.

DeWitt ran to the front of the hotel and law enforcement arrived shortly thereafter. Officers took a statement from DeWitt but she did not include that she believed the woman who yelled "Dylan" to be Jorge or the robber to be Heins. Law enforcement searched the area, but did not locate either the suspect or the woman.

2

On April 10, two days after the robbery, law enforcement arrested Heins at Jorge's home for an unrelated incident. Jorge's home was less than a block from the WoodSpring hotel. Heins stayed there three or four days a week and kept belongings in Jorge's room. Officers removed Heins from the home and conducted a search. In Jorge's room, officers found a guitar case with a red bandana tied around it, a loaded Remington 12-gauge shotgun inside the guitar case, and 12-gauge shotgun shells on the floor. Officers spoke with Jorge and asked her if Heins had a firearm. She told law enforcement that he did.

A few days later, an officer from the City of Everett police department presented DeWitt with a photo lineup. From the photo montage, DeWitt identified Dylan Heins as the man who robbed her. DeWitt recognized Heins from seeing him near the WoodSpring hotel and searching him on Facebook after the robbery.

While in jail, Heins communicated with his brother, Brandon Heins.[1] In a letter intercepted by the jail in May 2022, Heins asked his brother to, "[t]ell my wiffy [sic] to offer [DeWitt] in my rob case $1,000 to say she made a mistake." Heins then asked his brother to "tap in with Chelsea if [Jorge] can't make this happen. . . . Let her know I am looking at like 15 years. I need her more now than ever."[2]

Heins also conducted video calls with Jorge while in jail. In one of the calls, Heins referenced DeWitt, stating, "[l]ook, what I need to know is what's up

---

[1] Because the Heins brothers have the same last name, we use Brandon's first name solely for clarity.

[2] Chelsea is Heins's ex-girlfriend.

3

with [DeWitt]?" Jorge[3] told Heins he needed to "stop talking." When Heins tried again, asking "I just need to know is it good or no," Jorge responded "[n]o." Another individual sitting next to Jorge on the video call noted, "[i]t won't be good if you don't shut the fuck up."

On another call, while discussing the April 10 arrest, Heins told Jorge that law enforcement were "telling [him] that you're telling them everything." Jorge responded that "they need proof of all this. . . . That's bullshit." Heins then told Jorge to "figure it out."

The State charged Heins with robbery in the first degree for the incident with DeWitt on April 8, first degree unlawful possession of a firearm for the incident on April 10, and witness tampering for the letter to his brother.

DeWitt's testimony at trial corroborated the letter Heins wrote. DeWitt testified Jorge reached out to her shortly after the robbery, stating that Heins was sorry and felt bad, and asking that she "please don't do this." Jorge's testimony substantiated DeWitt's—she said Heins asked her to tell DeWitt he was sorry and he made a mistake. Jorge also testified that Heins knew DeWitt regularly sold Jorge drugs.

During trial, when asked if she had ever seen Heins with a gun, Jorge testified she had. The following questioning occurred between Jorge and the State:

> Q: Did you see [Heins] with a gun on April 10th?

---

[3] Heins and Jorge are seemingly attempting to conceal Jorge's identity by not using her name and talking in the third person, but it becomes clear throughout the video that the woman is Jorge.

A: No.

Q: Tell me about when you have seen him with a gun this year.

[Heins]: Objection. Relevance.

The court: Overruled.

Q: You may answer.

. . .

A: He would carry one for protection whenever he was out and about.

Q: Okay. And what kind of gun was it?

A: I wouldn't know. It was a handgun.

Q: Okay. Did you ever know him to carry a shotgun?

A: No.

Q: Did anybody ever tell officers in your presence that he had a shotgun?

A: I told officers that there was a shotgun in my room.

Jorge testified the shotgun was hers, but Heins had seen and held the shotgun. Heins objected.

Outside the presence of the jury, the court agreed to strike the question and answer concerning Heins holding the shotgun. The court informed the State it could only ask about the shotgun in regard to a specific incident, not generally. Heins then re-raised his prior objection to the pistol (handgun)[4] testimony. The court said it would tell the jury to disregard the question and answer concerning Heins possessing a pistol, but the State could ask specifically about Heins possessing a pistol on April 8.

---

[4] The court and the parties use the terms "pistol" and "handgun" interchangeably.

When the jury returned, the court provided them with the following instruction: "Whereas the witness was asked if [Heins] has a pistol, you are to disregard that question and the response." The court did not give an instruction to disregard the question and answer concerning Heins holding the shotgun. Heins did not object.

Over the course of the trial, Heins's consistently claimed he was with his ex-girlfriend Perry, at the time of the robbery and Jorge was the one who robbed DeWitt. Perry corroborated this account. Perry stated around 1:00 or 2:00 a.m., Jorge called Heins and told her she was going to rob DeWitt and wanted Heins to come. Perry testified Heins said no and stayed with her until 5:00 or 6:00 a.m., at which time she dropped him off at Jorge's.

Lloyd Hough, Jorge's roommate who called police on April 10, also testified at trial. He said prior to the incident, he had seen Heins multiple times on the bus and Heins "always had a guitar case on his back."

The jury found Heins guilty of robbery in the first degree, unlawful possession of a firearm in the first degree, and witness tampering. Heins appeals.

Analysis

Right to a Fair Trial

Heins claims the court violated his right to a fair trial when it failed to instruct the jury to disregard the testimony regarding the shotgun. The State contends Heins waived the argument by failing to object. We agree with the State.

6

The right to a fair trial is a fundamental liberty secured by article I, section 22 of the Washington State Constitution. WASH. CONST. art. I, § 22. The right to a fair trial may be impacted by a trial irregularity, such as when the jury hears inadmissible testimony. *State v. Escalona*, 49 Wn. App. 251, 253-55, 742 P.2d 190 (1987). A trial irregularity warrants reversal of a case only when "such error is prejudicial to the accused, and only those errors which may have affected the outcome of the trial are prejudicial." *State v. Davenport*, 100 Wn. 2d 757, 761, 675 P.2d 1213 (1984) (citation omitted). To determine whether a trial irregularity is prejudicial, the court examines "(1) the seriousness of the irregularity, (2) whether the statement in question was cumulative of other evidence properly admitted, and (3) whether the irregularity could be cured by an instruction to disregard the remark." *Escalona*, 49 Wn. App at 254.

Under RAP 2.5(a), an appellate court "may refuse to review any claim of error which was not raised in the trial court." When a party fails to object to a ruling or engages in conduct that invites the ruling, the party waives its right to challenge the ruling on appeal. *Magana v. Hyundai Motor Am.*, 123 Wn. App. 306, 314, 94 P.3d 987 (2004). "The appellate courts will not sanction a party's failure to point out at trial an error which the trial court, if given the opportunity, might have been able to correct to avoid an appeal." *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988).

Here, Heins failed to object to the court's lack of curative instruction regarding the shotgun. Outside the presence of the jury, the court noted it would instruct the jury to disregard the question and answer concerning Heins holding

7

the shotgun. But when the court gave its curative instruction to the jury, it only mentioned Heins's possession of the pistol. While Heins properly objected to the original testimony about the shotgun, that objection does not automatically attach to all future action by the court concerning that testimony. To preserve the error for review, Heins needed to object to the curative instruction during trial and give the court a chance to correct its mistake.

Because Heins failed to object to the instruction, he waived the argument. We therefore decline to reach the issue.

<u>Ineffective Assistance of Counsel</u>

Heins contends he was subject to ineffective assistance of counsel when his attorney failed to object to the admission of the testimony concerning the shotgun. The State claims the failure to object was not ineffective assistance of counsel because the admitted answer was not prejudicial. We again agree with the State.

To succeed on a claim of ineffective assistance of counsel, a defendant must satisfy a two-prong test, establishing: (1) counsel's representation was deficient; and (2) defendant was prejudiced by counsel's deficient representation. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

1. Deficiency of Representation

When claiming deficiency of representation, the defendant must first show their counsel's representation "fell below an objective standard of reasonableness based on consideration of all the circumstances." *McFarland*, 127 Wn.2d at 334-35. This can be done by demonstrating an "absence of

legitimate strategic or tactical reasons supporting the challenged conduct" and, had the objection been made, it would have likely succeeded. *State v. Vazquez*, 198 Wn.2d 239, 248, 494 P.3d 424 (2021).

Here, Heins demonstrates his counsel's representation fell below an objective standard of reasonableness. The objection had already been made and the court agreed to strike the testimony as asked. There is no legitimate tactical reason not to bring this oversight to the court's attention. Therefore, Heins's representation was deficient for failing to object to the court's curative instruction.

### 2. Prejudice

In addition to deficiency of counsel, the defendant must also show "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2 563 (1996) (quoting *Strickland v. Washington*, 466 U.S. 668, 687,104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). This showing is made when there is a " 'reasonable probability' " that, but for, the counsel's error, the result of the trial would have been different. *Vazquez*, 198 Wn.2d at 248 (quoting *McFarland*, 127 Wn.2d at 334-35). "The improper admission of evidence constitutes harmless error if the evidence is of minor significance in reference to the overall, overwhelming evidence as a whole." *State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997).

While Heins is able to demonstrate deficient representation, he cannot show the result of the trial would have been different had the evidence not been

admitted.  The minor piece of testimony that Heins held the shotgun was not prejudicial; even without the admitted testimony, sufficient evidence supports Heins's guilt as to all three charges.

The main fact contested concerning the robbery at trial was the identity of the robber.[5]  DeWitt testified the robber had a shotgun, wore a red bandana, and responded to the name "Dylan."  She recognized Jorge as the women present at the robbery and knew Jorge was dating someone named Dylan.  She identified Heins in a  photo lineup with law enforcement a few days after the robbery.  DeWitt's testimony was corroborated by the items found in Jorge's room during the April 10 arrest and Heins's attempts to prevent DeWitt from testifying.

Substantial evidence supports the possession charge.  The shotgun was found in Jorge's room, and it was in a guitar case with a red bandana tied around it.  In addition to DeWitt's testimony that the robber wore a red bandana and had a shotgun, Jorge's roommate testified he had seen Heins multiple times riding the bus with a guitar case on his back.  Jorge testified she did not keep her shotgun in a guitar case.

Heins's behavior is also evidence that substantiates the robbery and witness tampering charges.  In a video call from jail, Heins asked Jorge to apologize to DeWitt and say he had made a mistake.  Then, in a letter to his brother, he repeated that request, asking his brother to have Jorge "offer [DeWitt] in my rob case $1,000 to say she made a mistake."  The letter also asked

---

[5]  Heins did not argue the robbery occurred or any other elements of the crime.

Brandon to see if Perry would act as a witness for him, stating, "we have to be very smart about this move that I have to make."

Heins claims the admitted testimony allowed the jury to speculate as to Heins's propensity for criminal behavior, thereby prejudicing him. But the evidence does not support that there is a "reasonable probability" that, but for, his counsel's error, the result of the trial would have been different. First, after the testimony was given, it was not brought up again. The State never mentioned the testimony or relied on it for their argument. In addition, to determine the testimony was evidence of criminal behavior, the jury would have to make an inference as to when Heins held the shotgun, since Jorge did not specify an event. Rather, Jorge testified Heins did not handle the shotgun on April 10. Finally, in finding Heins guilty of robbery in the first degree, the jury necessarily found that Heins had held a shotgun on a previous occasion, thereby making the admitted evidence cumulative. For these reasons, the court's failure to properly instruct the jury did not affect the outcome of the trial.

Because Heins was not prejudiced when his counsel failed to object to the court's curative instruction, he was not deprived of a fair trial. We affirm.

_____
Smith, C.J.

WE CONCUR:

_____        _____
Díaz, J.                                Coburn, J.

11